******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE HARMONY Q.*
(AC 39614)

Sheldon, Keller and Prescott, Js.

*Argued February 3—officially released March 3, 2017\*\**

(Appeal from Superior Court, judicial district of
Hartford, Juvenile Matters, Woods, J.)

*David J. Reich*, assigned counsel, for the appellant
(respondent father).

*Evan O'Roark*, assistant attorney general, with
whom, on the brief, were *George Jepsen*, attorney general, *Gregory T. D'Auria*, solicitor general, and *Benjamin Zivyon*, assistant attorney general, for the
appellee (petitioner).

*Opinion*

PER CURIAM. The respondent father, Carlos Q., appeals from the judgment of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families, terminating his parental rights with respect to his daughter, Harmony Q.[1] On appeal, the respondent claims that the court improperly concluded that (1) he had failed to achieve a sufficient degree of personal rehabilitation necessary to encourage a belief that he could assume a responsible position in Harmony's life within a reasonable period of time,[2] and (2) termination of his parental rights was in the best interest of the child.[3] We affirm the judgment of the trial court.

The record reveals the following relevant facts, which are uncontested or were found by the trial court. The respondent is the father of five children, including Harmony. While living in Orlando, Florida, he married Myra M., who gave birth to the respondent's first two children. In 2004, he ended the relationship with Myra and moved to Hartford with the two children from that marriage. The respondent met another woman and fathered two more children. Those children have always resided with their mother. In 2009, he sent the two children who were residing with him back to Florida to live with their mother. Since 2009, none of his children has resided with him.

In 2011, the respondent met Luz R. (mother), who gave birth to their daughter, Harmony Q., on August 29, 2013. One month before Harmony's birth, the respondent was arrested in Massachusetts for the illegal possession of a firearm. Prior to that incident, the respondent had been arrested in Connecticut nine times, between 2007 and 2013, on charges including assault and possession of narcotics.

Harmony resided with the mother until she was arrested on November 7, 2013, and charged with the sale of illegal drugs, possession of narcotics, possession of drug paraphernalia, and risk of injury to a child. The Department of Children and Families (department) subsequently removed Harmony from the mother's home and placed her with her cousin, Juan N., and his wife, Nilda N. The respondent was released on bond that same month, after Harmony already had been placed with her maternal relatives.[4] In March, 2014, Harmony was adjudicated neglected and committed to the care and custody of the commissioner.

The respondent subsequently was sentenced to two years of incarceration, eighteen months mandatory, on the illegal possession of a firearm charge. He began serving that sentence on September 23, 2014. In the ten months between when he was released on bond and when he returned to serve his sentence, the respondent was referred by the department for multiple services, which he failed to complete.[5] He also failed to attend

court-mandated parenting and individual counseling, and was arrested for a tenth time in Connecticut in connection with an unrelated incident.[6]

The respondent, during those months, supported the mother's effort to reunify with Harmony. Nevertheless, he personally visited Harmony only periodically. Approximately one month before the respondent returned to Massachusetts to serve his sentence on the firearm charge, on August 24, 2014, Harmony's commitment was revoked and she was returned to the custody of the mother under a period of nine months of protective supervision by the department. Harmony resided with the mother for approximately four and one-half months before being removed from her custody a second time, because she was arrested again for selling narcotics out of her apartment. The department again placed Harmony with Juan N. and Nilda N. On January 16, 2015, Harmony was recommitted to the care and custody of the commissioner.[7] Thereafter, the department brought Harmony to the prison for monthly supervised visits with the respondent. On May 12, 2015, the commissioner filed a petition seeking the termination of the respondent's and the mother's parental rights, alleging the ground of failure to rehabilitate as to both parents. The court approved, on November 10, 2015, a permanency plan of termination of parental rights and adoption.

While in prison, the respondent participated in various programs offered by the Department of Correction in Massachusetts, which targeted parenting skills, financial wellness, and prevention relapses. The respondent's sentence ended on January 4, 2016, after which he moved back to Connecticut and obtained gainful employment and his own apartment. After his release, he was required, by court-ordered specific steps, to complete services with local providers. Not only did he fail to complete any of those services, but the respondent informed the assigned social worker, Ama Tandoh, that he had "done enough" and did not believe that he needed any additional services.

The respondent was also offered weekly supervised two hour visits with Harmony. Between January, 2016, and March, 2016, the respondent failed to attend three scheduled visits with Harmony, citing work scheduling conflicts despite his knowledge that the visits could be scheduled to accommodate his work schedule. Two other visits were cancelled due to weather and a state holiday. Despite the department's offer to add time to the regularly scheduled visits, the respondent failed to stay at the visits for the scheduled two hours. In fact, he would often leave after one hour, without explanation.

On March 14, 2016, the trial on the commissioner's petition to terminate the respondent's parental rights was held. During that trial, the respondent presented certificates that he had obtained while incarcerated,

as evidence of his completion of some of the offered programs. Testimony from two department social workers, including Tandoh, however, evidenced that the certificates indicated only attendance at the programs, not that the respondent had internalized the programs' lessons.

Tandoh testified that she had spoken with the provider who ran the only program for which the respondent had signed a release, and that that provider stated that the respondent had participated in those groups. Because the respondent failed to sign releases for the other programs, however, she was unable to obtain the same verification of participation.

In regard to Harmony, Tandoh testified that she had established a bond with her maternal relatives and considered them her parents, because she was only in the care of her mother for three to four months out of the two and one-half years of her life. Similarly, Juan N. testified that he and his wife treated Harmony as their own daughter, and that they would seek to adopt her if the trial court granted the termination of parental rights petition.

On August 5, 2016, the trial court granted the petition for the termination of the respondent's parental rights, finding that he had failed to rehabilitate within the meaning of General Statutes § 17a-112 (j) (3) (B) (i), and that he was unable or unwilling to benefit, within a reasonable period of time, from the department's reasonable efforts to reunify Harmony with him. In particular, the court based its conclusion on the facts that the respondent (1) had been incarcerated for illegal gun possession when the child was born, (2) had been incarcerated throughout much of Harmony's life, (3) had refused to communicate and cooperate with the department when it requested to visit his residence, (4) had failed to complete a mental health screening and substance abuse evaluation, (5) had refused to take part in an interactional one-on-one parenting program with Harmony because he said he was going to prison and therefore did not want to be reunified with her, (6) had refused the department's referrals for services after his release from prison, and (7) had missed three scheduled visits with Harmony without explanation. The court further held that termination of the respondent's parental rights was in Harmony's best interest because it found that there was no reasonable probability that the respondent would be able to serve a meaningful role in her life within a reasonable period of time, and that Harmony was bonded to and stable with her foster family. This appeal followed.

On appeal, the respondent claims that the court improperly found that he had failed to rehabilitate within the meaning of § 17a-112 (j) (3) (B) (i), and argues that he had indeed rehabilitated by participating in a number of programs offered through the correc-

tional facility at which he was incarcerated. He also claims that because he had rehabilitated, the court improperly found that termination of his parental rights was in the best interest of Harmony. The commissioner responds that the respondent had not rehabilitated, and that, accordingly, both of the respondent's claims fail.

"To prevail in a nonconsensual termination of parental rights, the commissioner must prove by clear and convincing evidence that one of several grounds for termination exists." *In re Michael R.*, 49 Conn. App. 510, 512, 714 A.2d 1279, cert. denied, 247 Conn. 919, 722 A.2d 807 (1998). The respondent in this case has challenged the court's finding that he failed to rehabilitate, within the meaning of § 17a-112 (j) (3) (B) (i). If the trial court concludes that failure to rehabilitate has been proved by the appropriate standard, it must still determine if termination of the respondent's parental rights is in the best interests of the child. See *In re Sydnei V.*, 168 Conn. App. 538, 551, 147 A.3d 147, cert. denied, 324 Conn. 903, A.3d (2016).

"A conclusion of failure to rehabilitate is drawn from both the trial court's factual findings and from its weighing of the facts in assessing whether those findings satisfy the failure to rehabilitate ground set forth in § 17a-112 (j) (3) (B). Accordingly . . . the appropriate standard of review is one of evidentiary sufficiency, that is, whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court. . . . We will not disturb the court's subordinate factual findings unless they are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *In re Leilah W.*, 166 Conn. App. 48, 68, 141 A.3d 1000 (2016).

After a careful review of the record, we conclude that the cumulative effect of the evidence, construed in a manner most favorable to sustaining the judgment, was sufficient to justify the court's ultimate conclusion that the respondent failed to achieve sufficient rehabilitation that would encourage the belief that, within a reasonable time, he could assume a responsible position in Harmony's life.

In addition, in the dispositional phase, we will reverse the court's determination of the best interest of the child only if the court's findings are clearly erroneous. *In re Paul M.*, 154 Conn. App. 488, 501–502, 107 A.3d 522 (2014). Similarly, we further conclude that the respondent's challenge to the court's best interest determination is also without merit because the basis for that claim is that he had rehabilitated. The court addressed each of the findings mandated by § 17a-112 (k) in writing and we are persuaded that its determina-

tion was not clearly erroneous. See id., 508.

The judgment is affirmed.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** March 3, 2017, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] In the same proceeding, the court also terminated the parental rights of Harmony's mother, Luz R. She did not appeal from that judgment. We therefore refer to Carlos Q. as the respondent throughout this opinion.

[2] See General Statutes § 17a-112 (j) (3) (B) (i).

[3] The respondent was represented by counsel throughout the underlying proceedings.

[4] The respondent was issued court-ordered specific steps on January 27, 2014, to facilitate the return of Harmony to his care. He failed to comply with those steps.

[5] One such program provided one-on-one parenting education. The respondent informed the parent educator at the program that he was "planning to go to prison, did not want to be reunified with his daughter and was not planning to be a full-time parent to this child." The respondent was subsequently discharged from that program.

[6] A nolle prosequi was entered as to that charge in August, 2014.

[7] The respondent was issued court-ordered specific steps, a second time, to facilitate the return of Harmony to his care. He failed to comply with those steps.