******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE MALACHI E.*
(AC 41875)

Lavine, Bright and Moll, Js.

*Syllabus*

The respondent mother appealed to this court from the judgment of the trial court terminating her parental rights with respect to her minor child. She claimed that the trial court erred with respect to the dispositional phase of the proceedings in that it improperly determined that the termination of her parental rights was in the best interest of the child. *Held*:

1. The respondent mother could not prevail on her claim that the trial court erred when it relied entirely on its adjudicatory determination that she had failed to achieve sufficient personal rehabilitation in determining whether the termination of her parental rights was in the best interest of the child; that court did not rely entirely on its adjudicatory determination in making its dispositional determination, as the court unambiguously made its best interest determination by considering, in addition to the mother's failure to rehabilitate, the seven factors prescribed by statute (§ 17a-112 [k]), including the past effect of the mother's conduct on the child, her then present ability to care for the child, the effect of the mother's prospective ability to rehabilitate in order to care for the child, the need for permanency, continuity, and stability in the child's life, and the child's need to end the period of uncertainty, and it expressly stated that it was making its determination considering multiple other factors pertaining to the child, and that it had balanced the child's needs against the benefits of maintaining a connection with the mother.

2. The trial court's best interest determination was factually supported and legally correct, and was not clearly erroneous; there was an abundance of evidence presented to support that court's determination that termination of the respondent mother's parental rights was in the best interest of the child, including the court's unchallenged factual findings regarding the mother's parental defects, the likelihood that those defects would continue into the future, and the need for the child to have stability in his life, and although the mother relied on other findings that were more favorable to her position, specifically, that the child was being cared for by the child's grandmother in the same residence as the mother and that the mother was making progress in her rehabilitation, those facts did not provide a basis to reverse the trial court's determination, as this court declined to place more emphasis on certain of the trial court's findings to reach a conclusion on appeal that differed from that of the trial court.

Argued January 11—officially released March 6, 2019**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of Hartford, Juvenile Matters, where the respondent father was defaulted for failure to appear; thereafter, the matter was tried to the court, *C. Taylor, J.*; judgment terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Affirmed*.

*Joshua Michtom*, assistant public defender, for the appellant (respondent mother).

*Benjamin A. Abrams*, assistant attorney general, with whom were *Benjamin Zivyon*, assistant attorney general, and, on the brief, *George Jepsen*, attorney gen-

eral, for the appellee (petitioner).

*Opinion*

BRIGHT, J. The respondent mother appeals from the judgment of the trial court terminating her parental rights with respect to her minor child, Malachi E.[1] On appeal, the respondent claims that the court erred in determining that the termination of her parental rights was in the best interest of the child because (1) the court relied entirely on its adjudicatory determination that the respondent had failed to achieve sufficient personal rehabilitation, and (2) there was no evidence to support its determination that the termination of her parental rights was in the best interest of the child.[2] We affirm the judgment of the trial court.

The following facts, which the court found by clear and convincing evidence, none of which the respondent challenges on appeal, and procedural history are relevant to the resolution of this appeal. The child was born in December, 2015, and is the respondent's only child. The child, the respondent, and the child's maternal grandmother (grandmother) have lived together in a two family home owned by the grandmother since the child's birth. On May 5, 2016, the grandmother reported to Monique Frey, a parent educator, who was employed by the Catholic Charities Nurturing Families Program and was working with the respondent, that she was concerned about the safety of the child. In particular, the grandmother reported that the respondent is an alcoholic, is aggressive when she is drunk, is depressed and has bipolar disorder, and that the child had fallen off of a bed on two occasions. Frey then reported the grandmother's concerns to the Department of Children and Families (department). On that same date, personnel from the department went to the respondent's residence to discuss the report, but the respondent was defensive and refused to cooperate.

On May 6, 2016, the grandmother reported to the department that the respondent began drinking alcohol after its personnel had departed from the residence. The grandmother also elaborated on her prior report, stating that the respondent has a prior history of drinking alcohol and smoking marijuana, that she suffers from blackouts when she drinks, and that she appropriately cares for the child when she is sober. On that same date, the department's personnel returned to the respondent's residence. Upon their arrival, the respondent became verbally and physically aggressive, and expressed a suicidal intent. As a result, she was taken to Hartford Hospital for a seventy-two hour hold and a mental health assessment. On May 7, 2016, the respondent was discharged from Hartford Hospital.

On May 9, 2016, personnel from the department met with the respondent regarding the future supervision of the child. At the meeting, the respondent admitted that she had a long history of substance abuse and

mental health issues, that she had been in and out of treatment for many years, that she had not been taking her prescribed medications for over a year, and that the child had fallen off a bed. The respondent agreed to submit to a substance abuse and mental health assessment at Wheeler Clinic, and to comply with any recommendations stemming therefrom. She also agreed to permit the grandmother to be the primary caretaker of the child until the respondent had made progress in her treatment, and that she would have only supervised contact with the child.

On June 20, 2016, the petitioner, the Commissioner of Children and Families, filed a neglect petition on behalf of the child and an addendum in which she claimed that the child had been denied proper care and attention as a result of the respondent's substance abuse, mental health issues, and the incidents in which the child had fallen from a bed. On June 21, 2016, Wheeler Clinic reported that the respondent had refused to comply with its recommendation that she participate in individual counseling or trauma-focused therapy to address her history of abuse and trauma. The next day, the grandmother reported to the department that the respondent continued to drink alcohol on the weekends. On August 4, 2016, the respondent, who was represented by counsel, appeared in court and denied the allegations of the neglect petition. The respondent then refused two subsequent recommendations for additional counseling services at Wheeler Clinic. On September 6, 2016, the grandmother reported to the department that the respondent had been intoxicated over the weekend and, consequently, the respondent was hospitalized first at Hartford Hospital, and then at the Institute of Living.

On September 12, 2016, the petitioner filed a motion for temporary custody of the child that was supported by an affidavit attested to by a social worker. Therein, the petitioner alleged, on the basis of the same facts as the neglect petition, that the child was in physical danger from his surroundings, that immediate removal was necessary to ensure his safety, and that reasonable efforts had been made to eliminate the need to remove the child. On the same date, the court granted the motion for temporary custody, pending a hearing that was scheduled for September 16, 2016, and ordered specific steps for the respondent's rehabilitation. On September 13, 2016, the petitioner filed an amended neglect petition.

On September 16, 2016, the respondent appeared in court with counsel, she agreed that the motion for temporary custody could be sustained, and the court issued specific steps for the respondent's rehabilitation. On approximately the same date, the child was removed from the custody of the respondent and placed in the care of the grandmother, who lived in the same resi-

dence. Since that time, the grandmother has continued to care for the child "full-time," and the respondent has maintained frequent contact and visits with the child, which have been supervised by the grandmother.

On November 8, 2016, the respondent entered a plea of nolo contendre to the neglect petition. On that same date, the court issued final specific steps for the respondent's rehabilitation. In accordance with the specific steps, the respondent was referred to several service providers, including Radiance Innovative Services, and engaged in services to address her mental health and alcohol use. Nevertheless, she achieved limited progress and continued to minimize her issues with alcohol and her history of trauma.

On May 4, 2017, a meeting was held among the respondent, a clinician from Radiance Innovative Services, and the department's personnel. At the meeting, the clinician reported that the respondent never expressed any accountability or responsibility for past incidents, denied being intoxicated and claimed to have had just one drink when she was out at dinner with a friend, refused an offer of shelter or sober living housing because she wanted to retain her freedom, continued to minimize her issues with her alcohol use, and stated that alcohol was not an issue for her. On May 18, 2017, the department referred the respondent to the Therapeutic Family Time Program; however, on June 6, 2017, it learned that the respondent had been discharged for her failure to complete the intake process.

On June 13, 2017, the petitioner filed a motion to review a permanency plan that recommended the termination of the respondent's parental rights and subsequent adoption of the child. On June 28, 2017, the department's personnel conducted a home visit during which the respondent adamantly refused to participate in any additional programs, and said that the department could keep the child. During that same visit, the grandmother confirmed that the petitioner was drinking alcohol the day prior to the May 4, 2017 meeting.

In August and September, 2017, the department started facilitating weekly supervised visits at its office. During that time, the respondent reported to the department that she had been consistently attending therapy, working on her issues, and was making progress in her treatment. She expressed an interest in reunification with the child and recognized that she had made some mistakes. On September 13, 2017, the clinician reported that the respondent was more stable and was doing well and, as a result, the frequency of her sessions was reduced from weekly to biweekly. On September 20, 2017, Frey reported that their recent sessions had been "okay" compared to prior sessions and that the respondent expressed an interest in ending the process so that she could parent the child.

On October 15, 2017, the court granted the petitioner's motion to review and approved the permanency plan. On October 16, 2017, the petitioner filed a petition to terminate the respondent's parental rights with respect to the child. The petitioner claimed, among other things, that the child had been found to be neglected and that the respondent had failed to achieve the required degree of personal rehabilitation. On November 16, 2017, the respondent appeared in court and denied the allegations of the petition.

On June 5, 2018, after a one day trial, the court issued a memorandum of decision in which it granted the petition to terminate the respondent's parental rights. The court made extensive findings of fact and concluded that the petitioner had met her burden to establish by clear and convincing evidence that statutory grounds for termination existed and that termination was in the best interest of the child.

With respect to the statutory grounds for termination, the court determined that the child previously had been adjudicated neglected and that the respondent had failed to achieve a sufficient degree of personal rehabilitation because she failed to comply fully with the specific steps for her rehabilitation that were ordered by the court on September 12 and 16, and November 8, 2016. In particular, the court determined that the respondent had not, and would not, overcome her mental health and substance abuse problems within a reasonable time so that she would "be able to serve as a safe, responsible, and nurturing parent for [the child] . . . ." The court also determined that termination of the respondent's parental rights was in the best interest of the child because, in light of the importance of long-term stability and the need for expedient custodial determinations, the respondent had not been, and would not be able to be, a safe, responsible, and nurturing parent for the child. This appeal followed. Additional facts will be set forth as necessary.

Before discussing the respondent's claims, we briefly set forth the legal principles that govern our review. "Proceedings to terminate parental rights are governed by [General Statutes] § 17a-112. . . . Under [that provision], a hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the . . . grounds for termination of parental rights set forth in § 17a-112 [(j) (3)] exists by clear and convincing evidence. The commissioner . . . in petitioning to terminate those rights, must allege and prove one or more of the statutory grounds." (Internal quotation marks omitted.) *In re Egypt E.*, 327 Conn. 506, 526, 175 A.3d 21, cert. denied sub nom. *Morsy E.* v. *Commissioner, Dept. of Children & Families*, U.S. , 139 S. Ct. 88, 202 L. Ed. 2d 27 (2018). "Also, as part of the adjudicatory

phase, the department is required to prove, by clear and convincing evidence, that it has made reasonable efforts . . . to reunify the child with the parent, unless the court finds . . . that the parent is unable or unwilling to benefit from reunification . . . ." (Internal quotation marks omitted.) *In re Elijah C.*, 326 Conn. 480, 500, 165 A.3d 1149 (2017); see General Statutes § 17a-112 (j) (1).

"If the trial court determines that a statutory ground for termination exists, then it proceeds to the dispositional phase." (Internal quotation marks omitted.) *In re Elijah C.*, supra, 326 Conn. 500. "In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)].[3] . . . The seven factors serve simply as guidelines for the court and are not statutory prerequisites that need to be proven before termination can be ordered. . . . There is no requirement that each factor be proven by clear and convincing evidence." (Footnote added; internal quotation marks omitted.) *In re Athena C.*, 181 Conn. App. 803, 811, 186 A.3d 1198, cert. denied, 329 Conn. 911, 186 A.3d 14 (2018); see *In re Nevaeh W.*, 317 Conn. 723, 740, 120 A.3d 1177 (2015). "In the dispositional phase . . . the emphasis appropriately shifts from the conduct of the parent to the best interest of the child. . . . The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [his or her] environment." (Internal quotation marks omitted.) *In re Athena C.*, supra, 811. "Because a respondent's fundamental right to parent his or her child is at stake, [t]he statutory criteria must be strictly complied with before termination can be accomplished and adoption proceedings begun." (Internal quotation marks omitted.) *In re Elijah C.*, supra, 326 Conn. 500.

On appeal, the respondent does not contest the court's determination with respect to the adjudicatory phase, namely, that she had failed to achieve rehabilitation, or any of the court's factual findings. Instead, the respondent claims that the court erred with respect to the dispositional phase because it improperly determined that the termination of her parental rights was in the best interest of the child. We now turn to each of the respondent's claims that challenge the court's best interest determination.

I

The respondent first claims that the court erred because it relied entirely on the respondent's failure to achieve rehabilitation in determining whether the termination of her parental rights was in the best inter-

est of the child. In particular, the respondent argues that the court conflated the adjudicatory phase with the dispositional phase when it improperly failed to "perform a separate analysis of [the child's] best interests," as required by § 17a-112 (j) (2), because the court "entirely substituted the [respondent's] failure to rehabilitate as the basis for its best interests determination." We disagree.

We first set forth the applicable standard of review and specific legal principles that govern our analysis of this claim. "The interpretation of a trial court's judgment presents a question of law over which our review is plenary. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *In re James O.*, 322 Conn. 636, 649, 142 A.3d 1147 (2016).

Our Supreme Court repeatedly has held that the adjudicatory phase is separate from the dispositional phase. "It is axiomatic that, once a child has been adjudicated neglected, the dispositional decision must be based on the best interest of the child and that the interest of the child and the parent may diverge." *In re Natalie S.*, 325 Conn. 833, 847, 160 A.3d 1056 (2017); see *In re Baby Girl B.*, 224 Conn. 263, 280, 618 A.2d 1 (1992) ("[o]ur statutes and caselaw make it crystal clear that the determination of the child's best interests comes into play only after statutory grounds for termination of parental rights have been established by clear and convincing evidence" [emphasis omitted; internal quotation marks omitted]); *In re Jessica M.*, 217 Conn. 459, 466 n.5, 586 A.2d 597 (1991) (statute permitting the termination of parental rights "expressly requires the court to find, in addition to the existence of an enumerated ground for termination, that such termination is in the best interests of the child").

Although the emphasis shifts from the parent to the child in the dispositional phase; *In re Athena C.*, supra, 181 Conn. App. 811; a trial court is not required to blind itself to any parental deficiencies that also were considered during the adjudicatory phase. Our precedents establish that the consideration of the parent's circumstances, including the parent's degree of rehabilitation, is proper during the dispositional phase.[4] Indeed, the respondent explicitly recognizes in her brief on appeal that the determinations made in the adjudicatory and dispositional phases "may often be so intertwined that the former leads almost inexorably to the latter . . . ." Nevertheless, she argues that the court improperly failed to make the required best interest determination because it relied entirely on her failure to

rehabilitate. We disagree with the respondent's interpretation of the court's decision.

The court made the following relevant findings and determinations with respect to the adjudicatory phase and the dispositional phase. In reaching its determination that the respondent had failed to achieve a sufficient degree of personal rehabilitation, which is unchallenged on appeal, the court found that the respondent had failed to comply fully with nine of the seventeen specific steps that were ordered by the court on September 12 and 16, and November 8, 2016.[5] The court found that the respondent had "been unable to correct the factors that led to the initial commitment of her child, insofar as she is concerned. The clear and convincing evidence reveals that from the date of commitment through . . . the time of trial, [the respondent] ha[d] not been available to take part in her son's life in a safe, nurturing, and positive manner, and, based on her issues of mental health, substance abuse, parenting deficits, and a failure to complete and benefit from counseling and services, she will never be consistently available to [the child]."

The court further found that, although the respondent had attended "various referrals and programs for counseling" and that she was making progress in her rehabilitation treatment, she had "failed to show any consistent and adequate benefit from these referrals," and she had "failed to improve her parenting ability to acceptable standards as far as her child's safety and emotional needs are concerned." The court also found that the petitioner "ha[d] demonstrated, by clear and convincing evidence, that [the respondent] cannot exercise the appropriate judgment necessary to keep [the child] safe and healthy and to maximize his abilities to achieve," that "it is patently clear that [the respondent was] not in a better position to parent her child than she was at the time of [the child's] commitment, and still remains without the qualities necessary to successfully parent him," and that "[g]iven th[e] respondent's history of mental health and substance abuse issues, it is reasonable to infer that she will remain besieged by these issues for some extensive time, and that she will not be physically available to serve as a custodial resource for [the child] during the time frame for rehabilitation contemplated in § 17a-112 (j) (3) (B) [(ii)]."

In reaching its determination that the termination of the respondent's parental rights was in the best interest of the child, the court first made the required findings as to each of the statutory factors provided by § 17a-112 (k). In sum, it determined that (1) the petitioner had made available timely, appropriate, and comprehensive reunification services to the respondent, (2) the petitioner had made reasonable efforts to reunify the respondent and the child, (3) the respondent had failed to comply with nine of the seventeen court ordered

specific steps, (4) the respondent has a strong relationship and bond with the child, (5) the child was twenty-nine months old, (6) the respondent had been unable or unwilling to make a realistic and sustained effort to conform her conduct to acceptable parental standards, and (7) there was no unreasonable conduct by any party that prevented the respondent from maintaining a relationship with the child. In doing so, the court incorporated, in a summary fashion, the same factual findings that led to its conclusion in the adjudicatory phase that the respondent had failed to comply with the specific steps and that she failed to benefit from those services. For instance, the court, consistent with its earlier findings, found that although the respondent had "complete[d] some programs . . . these programs failed to [affect] sufficient change . . . to correct [the respondent's] inability to appropriately parent [the child]."

The court then outlined that it had "examined multiple relevant factors, including the child's interests in sustained growth, development, well-being, stability, and continuity of his environment; his length of stay in foster care; the nature of his relationships with his foster parent and his biological parents; and the degree of contact maintained with [the respondent]," and that it had "balance[d] the child's intrinsic needs for stability and permanency against the benefits of maintaining a connection with [the respondent]."

The court then found that "[t]he clear and convincing evidence shows that [the respondent] ha[d] demonstrated mental health issues, substance abuse issues, parenting deficits, and a failure to fully benefit from counseling and services," that she "was unable to appropriately address these issues by the time of the filing of the [termination of parental rights] petition," that "[h]er ability to care for her son remained as poor at the time of the . . . trial as it was at the inception of the case," that she "remained incapable of being a safe, nurturing, and responsible parent for [the child]," that "despite her referrals and services, [the respondent] ha[d] failed to rehabilitate herself sufficiently to be a safe, nurturing, and responsible parent for [the child]," and that "too much time ha[d] already elapsed to justify giving [the respondent] further time to show her rehabilitation."

The court further found that "the time that the [respondent] need[s] to attempt to rehabilitate . . . as [a] safe, nurturing, and responsible [parent], if that were possible, is time that the child cannot spare," that the respondent's parental performance shows that she "lacks the attributes and characteristics necessary to fulfill a valid parental role," that the respondent's failure to address her issues in a timely manner "clearly and convincingly show[s] that it is unlikely that [she] will ever be able to conform [her] individual behaviors to

appropriate parental standards or be able to serve as a safe, nurturing, and responsible [parent] for [the child]," that given her "individual behaviors and performances so far, [the] court [could not] foresee either respondent parent in this case ever having the ability or the patience to follow the regimen necessary for their child to maximize his abilities and achievements," that her "inability to remain sober and to comply with treatment requirements speaks volumes of her lack of ability to parent her son and to keep [the child] safe in the long run," and that the child "can no longer wait for permanency, continuity, and stability in his life."

The court then outlined the principles of long-term stability and the exigency of termination of parental rights proceedings and concluded that "the clear and convincing evidence in this case establishes that [the child] is entitled to the benefit of ending, without further delay, the period of uncertainty he has lived with as to the unavailability of [the respondent] as [caretaker]. . . . Having balanced [the child's] individual and intrinsic needs for stability and permanency against the benefits of maintaining a connection with the [respondent], the clear and convincing evidence in this case establishes that the child's best interests cannot be served by continuing to maintain any legal relationship to the [respondent]."

The foregoing discussion makes clear that, contrary to the respondent's claim, the court did not rely entirely on its adjudicatory determination in making its dispositional determination. Instead, the court unambiguously made its best interest determination considering, not only the respondent's failure to rehabilitate, but also the seven statutory factors prescribed by § 17a-112 (k), the past effect of the respondent's conduct on the child, her then present ability to care for the child, the effect of the respondent's prospective ability to rehabilitate in order to care for the child, the need for permanency, continuity, and stability in the child's life, and the child's need to end the period of uncertainty. Further, the court expressly stated that it was making its determination considering multiple other factors pertaining to the child, and that it had balanced the child's needs against the benefits of maintaining a connection with the respondent. Therefore, we conclude that the court did not rely solely on the respondent's past failures to achieve rehabilitation in determining whether the termination of her parental rights was in the best interest of the child.

## II

The respondent also claims that there was no evidence to support the court's determination that termination of her parental rights was in the best interest of the child. The respondent argues that, contrary to the court's determination, the evidence presented relating to her unique circumstances demonstrates that this is

the rare case in which termination was not warranted. In particular, the respondent argues that termination was improper because the court found, among other things, that the child is currently being cared for by the grandmother in the same residence in which the respondent resides, and the respondent was making progress in her rehabilitation treatment. We disagree.

We first set forth the applicable standard of review that governs our analysis of this claim. "[A]n appellate tribunal will not disturb a trial court's finding that termination of parental rights is in a child's best interest unless that finding is clearly erroneous. . . . On appeal, our function is to determine whether the trial court's conclusion was factually supported and legally correct. . . . In doing so, however, [g]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *In re Davonta V.*, 285 Conn. 483, 488, 940 A.2d 733 (2008); see also *In re Brayden E.-H.*, 309 Conn. 642, 657, 72 A.3d 1083 (2013).[6]

"[T]he balancing of interests in a case involving termination of parental rights is a delicate task and, when supporting evidence is not lacking, the trial court's ultimate determination as to a child's best interest is entitled to the utmost deference. . . . Although a judge [charged with determining whether termination of parental rights is in a child's best interest] is guided by legal principles, the ultimate decision [whether termination is justified] is intensely human. It is the judge in the courtroom who looks the witnesses in the eye, interprets their body language, listens to the inflections in their voices and otherwise assesses the subtleties that are not conveyed in the cold transcript." (Internal quotation marks omitted.) *In re Nevaeh W.*, supra, 317 Conn. 740.

In the present case, there was an abundance of evidence presented to support the court's determination that termination of the respondent's parental rights was in the best interest of the child. On the basis of the evidence presented, the court found that the following facts had been proven by clear and convincing evidence. The respondent had not been, and would not be, a safe, responsible, and nurturing parent for the child. The respondent's mental health issues, substance abuse issues, parenting deficits, and a failure to fully benefit from counseling and services are antagonistic to the best interest of the child. The child required permanency, continuity, and stability in his life, and an end to the period of uncertainty. The court also made additional findings as to the seven factors mandated under

§ 17a-122 (k), including that the respondent had failed to comply with a majority of the court ordered specific steps and that she had been unable or was unwilling to make a realistic and sustained effort to conform her conduct to acceptable parental standards. The respondent does not challenge any of the court's factual findings on appeal.

Affording the utmost deference to the court's decision, we conclude that the court's best interest determination was not clearly erroneous. The combination of the court's unchallenged factual findings regarding the respondent's parental defects, the likelihood that those defects would continue into the future, and the need for the child to have stability in his life, support the court's determination. Although the respondent directs our attention to other findings that are more favorable to her position, specifically, that the child is being cared for by the grandmother in the same residence as the respondent and that the respondent was making progress in her rehabilitation, these facts do not provide us a basis to reverse the court's determination. We decline the respondent's invitation to place more emphasis on certain of the court's findings so that we might reach a conclusion on appeal that differs from that of the trial court.

Therefore, we conclude that the court's best interest determination was factually supported and legally correct.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** March 6, 2019, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The court also terminated the parental rights of John Doe, the unknown father to the child, because he previously had been defaulted for failure to appear. In light of the fact that John Doe has not appealed from the judgment of the trial court, we refer in this opinion to the respondent mother as the respondent.

[2] The child's attorney, pursuant to Practice Book § 67-13, adopted the respondent's brief on appeal.

[3] General Statutes § 17a-112 (k) provides: "Except in the case where termination of parental rights is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption and Safe Families Act of 1997, as amended from time to time; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to

make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

[4] This court consistently has affirmed a trial court's best interest determination that was based, at least in part, on the court's previous findings relating to a parent's failure to rehabilitate. See, e.g., *In re Savannah Y.*, 172 Conn. App. 266, 281–82, 158 A.3d 864 (affirming trial court's best interest determination that was "largely based upon the respondent's chronic mental health and substance abuse issues"), cert. denied, 325 Conn. 925, 160 A.3d 1067 (2017); *In re Harmony Q.*, 171 Conn. App. 568, 574–75, 157 A.3d 137 (rejecting claim that trial court erred in making best interest determination on ground that court improperly determined that respondent failed to rehabilitate), cert. denied, 325 Conn. 915, 159 A.3d 232 (2017); *In re Gianni C.*, 129 Conn. App. 227, 237–38, 19 A.3d 233 (2011) (affirming trial court's best interest determination that was made, in part, on the basis of respondent's failure to rehabilitate within reasonable time period); *In re Sole S.*, 119 Conn. App. 187, 193–94, 986 A.2d 351 (2010) (affirming trial court's best interest determination that was made, in part, on the basis of psychologist testimony that it "would be in the child's best interest to give [the respondent] more time to achieve personal rehabilitation"); *In re Janazia S.*, 112 Conn. App. 69, 99–100, 961 A.2d 1036 (2009) (affirming trial court's best interest determination that was made, in part, on the basis of "abundant evidence of the respondent parents' ongoing struggles with criminal behavior and addiction").

[5] Specifically, the court found that the respondent had failed to comply fully with the following nine steps: (1) to keep appointments with the department and to cooperate with home visits by the department and the representative for the child; (2) to take part in parenting and individual counseling; (3) to submit to substance abuse assessments and to follow the recommendations regarding treatment; (4) to submit to random drug testing; (5) not to use illegal drugs or abuse alcohol or medicine; (6) to cooperate with service providers recommended for counseling, services, and substance abuse assessment or treatment; (7) to sign releases allowing the department to communicate with her service providers to check attendance, cooperation, and progress toward identified goals; (8) to secure and maintain adequate housing and legal income; and (9) to take all psychotropic medication as prescribed.

[6] We note that our Supreme Court has clarified that a trial court's ultimate conclusion that a ground for termination of parental rights has been proven presents a question of evidentiary sufficiency. See *In re Shane M.*, 318 Conn. 569, 587–88, 122 A.3d 1247 (2015) (clarifying standard of review); see also *In re Egypt E.*, supra, 327 Conn. 525–26 ("[a]lthough the trial court's subordinate factual findings are reviewable only for clear error, the court's ultimate conclusion that a ground for termination of parental rights has been proven presents a question of evidentiary sufficiency" [internal quotation marks omitted]).

Since *In re Shane M.*, our Supreme Court has not had occasion to apply the evidentiary sufficiency standard of review to a court's best interest determination. As a result, this court has either declined to decide whether to apply the evidentiary sufficiency standard of review to a best interest claim; see, e.g., *In re Elijah G.-R.*, 167 Conn. App. 1, 29–30 n.11, 142 A.3d 482 (2016); *In re Nioshka A. N.*, 161 Conn. App. 627, 637 n.9, 128 A.3d 619, cert. denied, 320 Conn. 912, 128 A.3d 955 (2015); or has continued to apply the clearly erroneous standard of review. See, e.g., *In re Angelina M.*, 187 Conn. App. 801, 803–804,    A.3d    (2019) (clearly erroneous); *In re Gabriella C.-G.*, 186 Conn. App. 767, 770,    A.3d    (2018) (clearly erroneous), cert. denied, 330 Conn. 969,    A.3d    (2019); contra *In re Athena C.*, supra, 181 Conn. App. 809, 815–17 (evidentiary sufficiency).

We see no reason why the standard of review applicable to the adjudicatory phase would also not apply to the dispositional phase, particularly in cases, as in the present case, in which the court's factual findings are uncontested; however, we decline to apply the evidentiary sufficiency stan-

dard instead of the clearly erroneous standard of review for the following reasons. First, we decline to adopt a standard of review for a best interest determination that our Supreme Court has yet to adopt. Second, both parties on appeal agree that the clearly erroneous standard of review applies to the present claim. Third, the evidence in the present case supports the court's determination under either standard because, as articulated by this court in *In re Nioshka A. N.*, "if the evidence upon which we have relied in finding that the trial court's best interest determination was not clearly erroneous were considered under the evidentiary sufficiency standard, and, thus, was construed in the light most favorable to upholding the trial court's best interest determination . . . that evidence, so construed, would be sufficient to prove by clear and convincing evidence that termination of the respondent's parental rights was in the best interest of the child." (Citation omitted.) *In re Nioshka A. N.*, supra, 161 Conn. App. 637 n.9.