IN RE LUKAS K.*
(SC 18626)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Vertefeuille, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued January 4—officially released April 5, 2011

*Shelley White*, with whom was *Mildred Doody*, for the appellant (respondent).

*Frank A. Manfredi*, for the appellee (petitioner).

*Denise Ansell*, for the minor child.

*David J. McGuire* and *Suzanne M. Love* filed a brief for the American Civil Liberties Union Foundation of Connecticut as amicus curiae.

*Richard Blumenthal*, former attorney general, and *Benjamin Zivyon* and *John E. Tucker*, assistant attor-

neys general, filed a brief for the department of children and families as amicus curiae.

*Opinion*

ROGERS, C. J. The sole issue in this certified appeal is whether the respondent father, who was incarcerated in another state and was therefore unable to participate in the trial on the application by the petitioner mother for termination of the respondent's parental rights, had a constitutional due process right to obtain a transcript of the trial and a continuance of the proceedings for the purpose of recalling witnesses and responding to the petitioner's evidence. The petitioner filed an application to terminate the respondent's parental rights with respect to his minor son, Lukas K. After a trial, the trial court granted the petition and issued an order terminating the respondent's parental rights. The respondent appealed from the order to the Appellate Court, which affirmed the judgment of the trial court. *In re Lukas K.*, 120 Conn. App. 465, 488, 992 A.2d 1142 (2010). This court then granted the respondent's petition for certification to appeal to this court limited to the following issue: "In a termination of parental rights proceeding, are the constitutional due process rights of the incarcerated respondent violated if said respondent is not provided with a trial transcript and an opportunity to recall witnesses prior to the conclusion of testimony?" *In re Lukas K.*, 297 Conn. 914, 995 A.2d 955 (2010). We conclude that the respondent was not constitutionally entitled to these procedures under the particular facts and circumstances of the present case. We therefore affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts and procedural history. "The petitioner and the respondent met approximately ten years prior to trial when he was incarcerated in Tennessee. During

his incarceration, the petitioner and the respondent communicated by letters and by telephone. In March, 2004, the respondent was released from prison, traveled to New Hampshire, where the petitioner and her relatives were residing, and developed a relationship with the petitioner that lasted through October, 2004.

"In November, 2004, the respondent was arrested for burglary occurring on June 13, 2004, tampering with witnesses or informants occurring on November 5, 2004, theft by unauthorized taking occurring on November 5, 2004, theft by unauthorized taking occurring on November 12, 2004, and escape occurring on November 29, 2004. On May 17, 2005, the respondent entered state prison in New Hampshire.

"Approximately one month later, in June, 2005, Lukas was born. Since his birth, Lukas has resided with the petitioner and his two older half sisters born to the petitioner from an earlier relationship. In October, 2005, the petitioner met her current husband. They moved in together in April, 2006, and were married one month later in May, 2006. The petitioner's husband, Lukas' stepfather, is the only father that Lukas has known, and Lukas relates to him as his father. His stepfather provides for and meets the needs of Lukas. As such, the petitioner, the stepfather, the two half sisters, Lukas and a child of the petitioner and the stepfather, born subsequent to their marriage, live as an integrated functioning family.

"The respondent admits that he has never seen or had contact with Lukas. Furthermore, the respondent admits that at this time, due to Lukas' young age, Lukas has no knowledge that the respondent is his biological father. The respondent has never paid child support.

"On April 16, 2007, the petitioner filed a petition to terminate the parental rights of the respondent in Probate Court, alleging that the respondent had abandoned

Lukas. Subsequently, the Probate Court granted the respondent's motion to transfer the case to the Superior Court for juvenile matters. On April 17, 2008, the Superior Court granted the petitioner's motion to amend her petition to add the second ground that no ongoing parent-child relationship exists between the respondent and Lukas. Due to negotiations over a potential consent agreement between the parties, the court granted a continuance on June 18, 2008. The court noted that if an agreement was not reached, the case would proceed to trial at the earliest available date. Because a consent agreement was not reached, the case proceeded to trial.

"At trial on December 10, 2008, the petitioner, her attorney, the attorney for Lukas and the attorney for the respondent appeared before the court. The respondent was incarcerated in New Hampshire at the time of trial and only available to participate by telephone for approximately thirty minutes [immediately preceding the commencement of the petitioner's case]. The issues before the court were whether the respondent's parental rights should be terminated on the basis of one or both of the alleged grounds and whether termination of the respondent's parental rights was in the best interest of Lukas. Additionally, after the petitioner rested her case, the respondent's counsel moved for a continuance and requested a transcript of the day's proceedings so that he could advise his client adequately on whether he should testify. The court denied those requests. In a memorandum of decision filed December 15, 2008, the court found by clear and convincing evidence that Lukas had been abandoned by the respondent, that there was no ongoing parent-child relationship between the respondent and Lukas and that it was in the best interest of Lukas to terminate the parental rights of the respondent.

"[In support of its decision, the trial court noted that] [p]ursuant to [General Statutes] § 45a-717 (e), a depart-

ment of children and families (department) social
worker [had] prepared a social study. The respondent
admitted to the department's social worker that he was
incarcerated in New Hampshire as a result of a burglary
and a dispute with a neighbor and that he had been
sentenced to four to nine years. Additionally, the
respondent admitted that he has been arrested many
times in the past both for federal offenses and crimes
committed in . . . Tennessee. He said that he was
incarcerated in the [S]outh for strong arm robbery, con-
spiracy to possess stolen firearms and eighteen or nine-
teen violations of probation in Tennessee. The
respondent claimed that he had not been convicted of
any crimes against women and children but that he had
a bad temper when it comes to men . . . .

"The [trial] court found that during the respondent's
2004 relationship with the petitioner, he abused, threat-
ened and committed domestic violence against the peti-
tioner both before and after she became pregnant with
Lukas. The respondent's abuse, however, was not tar-
geted only at the petitioner. The respondent also twice
struck one of Lukas' half sisters. As a result, both of
Lukas' half sisters are afraid of the respondent. Further-
more, the respondent has also threatened to kill the
petitioner. The petitioner's mother overheard such
threats two or three times. Although the petitioner
ended her relationship with the respondent in October,
2004, the respondent has threatened from prison to
send his family after the petitioner." (Internal quotation
marks omitted.) *In re Lukas K.*, supra, 120 Conn.
App. 468–70.

The respondent appealed from the judgment of the
trial court claiming, inter alia, that the court had violated
his procedural due process rights when it denied his
request for a trial transcript and a continuance. Id.,
470–71. The Appellate Court concluded that the respon-
dent had failed to establish a due process violation

under the balancing test set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). *In re Lukas K.*, supra, 120 Conn. App. 479. The respondent now claims on appeal to this court that the Appellate Court misapplied *Mathews* and improperly concluded that he was not constitutionally entitled to a transcript and a continuance.[1] We conclude that the Appellate Court properly determined that the trial court did not violate the respondent's due process rights.

Whether the respondent had a constitutional due process right to a transcript of the trial and a continuance of the termination proceedings is a question of law over which our review is plenary. See *State* v. *Long*, 268 Conn. 508, 520–21, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004). "The United States Supreme Court in *Mathews* v. *Eldridge*, [supra, 424 U.S. 335], established a three part test to determine whether the actions of the court violated a party's right to procedural due process. The three factors to be considered are (1) the private interest that will be affected by the state action, (2) the risk of an erroneous deprivation of such interest, given the existing procedures, and the value of any additional or alternate procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens attendant to increased or substitute procedural requirements. . . . Due process analysis requires balancing the government's interest in existing procedures against the risk of erroneous deprivation of a private interest inherent in those procedures." (Internal quotation marks omitted.) *In re Lukas K.*, supra, 120 Conn. App. 473–74.

With respect to the first prong of the *Mathews* balancing test, it is clear, and the petitioner does not dispute,

---

[1] After the respondent filed this certified appeal, we granted the applications of the department and the American Civil Liberties Union Foundation of Connecticut to file amicus curiae briefs.

that the respondent has an important, constitutionally protected interest in preserving his parental rights. *In re Baby Girl B.*, 224 Conn. 263, 279, 618 A.2d 1 (1992) ("the interest of parents in their children is a fundamental constitutional right that undeniably warrants deference and, absent a powerful countervailing interest, protection" and terminating legal relationship between parent and child is " 'a most serious and sensitive judicial action' "); *In re Juvenile Appeal (Docket No. 10155)*, 187 Conn. 431, 436, 446 A.2d 808 (1982) ("the respondent's interest in retaining his parental rights to his son, is clearly both compelling and constitutionally protected"). Accordingly, this prong weighs heavily in the respondent's favor.

The second prong of *Mathews* requires this court to determine the extent of "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards . . . ." *Mathews* v. *Eldridge*, supra, 424 U.S. 335. Thus, we must determine whether, under the facts and circumstances of this case, providing the respondent with a transcript of the trial and granting a continuance for the purpose of recalling witnesses and responding to the evidence would have meaningfully reduced the risk of an erroneous determination regarding the termination of the respondent's parental rights.

As we have indicated, the petitioner claimed two grounds for terminating the respondent's parental rights, namely, that (1) the respondent had abandoned Lukas and (2) there was no ongoing parent-child relationship between the respondent and Lukas. See General Statutes § 45a-717 (g).[2] With respect to the

---

[2] General Statutes § 45a-717 (g) provides in relevant part: "[T]he court may approve a petition terminating the parental rights . . . if it finds, upon clear and convincing evidence, that (1) the termination is in the best interest of the child, and (2) (A) the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest,

abandonment claim, the trial court made a factual finding that the respondent "has never seen or had contact with Lukas . . . [and] has never paid child support." The court acknowledged that the respondent had been incarcerated since Lukas' birth, but noted that, " '[w]hile . . . imprisonment alone does not constitute abandonment, it does not excuse [the] failure to attempt either to contact or to visit with his [child].' *In re Deana E.*, 61 Conn. App. 185, 194, 763 A.2d 37 (2000)." With respect to the claim that the respondent had no ongoing parent-child relationship with Lukas, the trial court stated that the respondent had conceded that no such relationship exists. The court also found that, because the respondent was incarcerated and his release date was uncertain, it would be detrimental to Lukas' best interest to allow time for a new relationship to develop. See *In re Alexander C.*, 67 Conn. App. 417, 426–27, 787 A.2d 608 (2001) (when incarcerated parent had made no attempt to develop relationship with child who was young infant, trial court properly terminated parental rights for lack of ongoing parent-child relationship), aff'd, 262 Conn. 308, 813 A.2d 87 (2003) (per curiam). In addition, the trial court found pursuant to § 45a-717 (h) (6),[3] that "[t]here was no evidence presented that the [respondent] has been prevented from maintaining a relationship with Lukas . . . for any reasons other

concern or responsibility as to the welfare of the child . . . [or] (C) there is no ongoing parent-child relationship which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interests of the child . . . ."

[3] General Statutes § 45a-717 (h) provides in relevant part: "[I]n determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding . . . (6) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

than his personal choice or circumstances."[4] Accordingly, the court concluded that the petitioner had proved by clear and convincing evidence that the respondent had abandoned Lukas and that there was no ongoing parent-child relationship between the respondent and Lukas.

The respondent claims that, if the trial court had granted his request for a copy of the transcript and a continuance, he could have rebutted the petitioner's evidence and the trial court's finding that he had not been "prevented from maintaining a meaningful relationship with the child by the unreasonable act or con-

---

[4] The petitioner testified at trial that she stopped living with the respondent in approximately October, 2004, because she was pregnant and was becoming ill as the result of the respondent's persistent abuse; she moved into her parents' apartment at that time; her parents lived next door to the apartment where she and the respondent had lived together; the respondent knew where the petitioner's parents lived and knew their telephone number; the respondent was incarcerated in November, 2004; Lukas was born in June, 2005; the respondent knew that the petitioner was pregnant and he did not contact her regarding Lukas until the petitioner commenced the termination proceedings; and the petitioner moved to Connecticut in April, 2006, to be with her current husband. The petitioner also testified that the respondent had "ways of contacting [her]," that he had her telephone number, and that she and the respondent had mutual friends who had informed the respondent about Lukas' birth and had sent him photographs of Lukas. The petitioner's mother testified that the respondent never contacted her or the petitioner's father, before or after the petitioner moved to Connecticut.

The petitioner also put into evidence a written "assessment for termination of parental rights [and] adoption" (report) prepared by Nadine Amanfo, a social worker employed by the department. The report stated that the petitioner had told Amanfo that she had tried to leave the respondent before she became pregnant, but that he had threatened to kill her and her children if she left him; the petitioner had become ill during her pregnancy as the result of the respondent's abuse; the petitioner moved into her parent's home during the pregnancy; the respondent then burglarized the petitioner's apartment and stalked the petitioner, until he was ultimately arrested and incarcerated; the petitioner moved into an apartment near her parent's residence when she was four months pregnant with Lukas; and the petitioner moved to Connecticut to be with her current husband in April of 2006. The petitioner had disclosed the report to the respondent before trial.

duct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent." General Statutes § 45a-717 (h) (6). The respondent gave no indication to the trial court, however, by offer of proof or otherwise, as to the specific nature of the additional evidence that he would have presented or attempted to elicit from the petitioner's witnesses.[5] Perhaps more significantly, he has not identified on appeal any additional evidence or argu-

[5] Immediately before trial, the trial court stated that it understood that the respondent was going to be available by telephone for one-half hour and asked counsel for the respondent whether the respondent intended to testify. Counsel for the respondent stated that the respondent intended to testify "at some point in time," but not that day. The trial court then stated: "[I]t's up to you. I'm not going to guarantee you that there will be another time for [the respondent] to testify, this is the day. . . . [T]his is the day we are having the trial and whatever you want to do with your half hour, you can do." During the telephone conference between the trial court and the respondent, the trial court asked whether it was correct that the respondent had never met Lukas. Counsel for the respondent responded: "That's correct, Your Honor." The respondent then stated, evidently referring to himself, that "he's been kept, he's been kept from." The trial court then asked whether the respondent had ever paid child support, and counsel for the respondent stated: "He's been incarcerated during [Lukas'] entire life, Your Honor." The respondent then stated: "[Lukas] was born almost . . . eight months after I . . . became incarcerated." Later, counsel for the respondent stated that "we'll stipulate that [the respondent has] had no contact with [Lukas]. The sole issue [is whether that was] voluntarily on his part or was it involuntary." The respondent chose not to not give any testimony during the telephone conference.

During trial, counsel for the respondent elicited testimony from the petitioner that she had not disclosed her Connecticut address to the respondent before she initiated the termination proceedings; that, because the respondent had threatened to "send his family after [her]," she told him that she was going to move frequently so that he would not be able to find her and Lukas; and that she had never brought Lukas to visit the respondent in prison.

To the extent that the respondent claims that he could not have disclosed the additional evidence relating to the issue of whether he was prevented from maintaining a relationship with Lukas during the telephone conference immediately preceding trial because he did not know what evidence the petitioner intended to present, we find any such claim unpersuasive. As we have indicated, the petitioner had disclosed the written assessment prepared by Nadine Amanfo to the respondent before trial, which contained much of the information that was developed at trial. See footnote 4 of this opinion.

ments that he could have presented if the trial court had granted his request for a transcript and a continuance. Cf. *State* v. *Lopez*, 280 Conn. 779, 790, 911 A.2d 1099 (2007) (when defendant did not identify on appeal any arguments that defense counsel would have made at sentencing hearing if trial court had granted defendant's request for continuance so that new counsel could review trial transcript, any impropriety in denying request for continuance was deemed harmless). At oral argument before this court, counsel for the respondent merely indicated that the respondent had not attempted to communicate with Lukas before the initiation of the termination proceedings because he did not know where Lukas was. Counsel did not explain how the respondent was prevented by the conduct of the petitioner or others from discovering Lukas' location. To the extent that the evidence would support a claim that the respondent was hampered by the petitioner's failure to disclose her Connecticut address to him and her

In addition, during the telephone conference between the trial court and the respondent immediately preceding trial, counsel for the petitioner presented an offer of proof indicating that the petitioner's mother was going to testify about "the ability of the respondent to have contact with the petitioner [during] his incarceration." Moreover, the respondent clearly was aware before trial that whether his failure to maintain a relationship with Lukas was voluntary was going to be a disputed issue. Accordingly, we can perceive no reason why the respondent could not have disclosed any evidence supporting his claim that he was prevented from maintaining a relationship with Lukas during the telephone conference. Although we agree with the respondent that the trial court should not lightly require a party to choose between presenting evidence out of order or forgoing the opportunity to present the evidence altogether, we do not think that this was an undue burden on the respondent in light of the circumstances present here. The respondent was entitled to a fair trial, not a perfect trial. *Michigan* v. *Tucker*, 417 U.S. 433, 446, 94 S. Ct. 2357, 41 L. Ed. 2d 182 (1974). It is also clear to us that nothing in the evidence that the petitioner actually presented at trial could have surprised the respondent or his counsel. Thus, counsel for the respondent could have informed the trial court when he requested a continuance at the conclusion of the petitioner's case of the general nature of the evidence that the respondent would present in rebuttal if given the opportunity.

statement to the respondent that, in the future, she was going to move frequently so that the respondent would not be able to find her and Lukas, counsel made no attempt to explain how the respondent intended to rebut the evidence that the petitioner had engaged in this conduct because the respondent had abused her and threatened to "send his family after [her]," or, if he could not rebut this evidence, how he intended to establish that the petitioner's conduct was unreasonable. See footnotes 4 and 5 of this opinion. Nor did counsel for the respondent explain how the respondent would have rebutted the petitioner's evidence that the respondent knew where her parents lived and their telephone number, and that he had made no attempt to locate Lukas through them. See footnote 4 of this opinion. In the absence of any indication that the respondent could have presented new material evidence on this issue, we conclude that providing the respondent with a transcript of the trial and granting a continuance for the purpose of recalling witnesses and responding to the evidence would not have meaningfully reduced the risk of an erroneous determination regarding the termination of his parental rights.

It is clear, therefore, that the third prong of *Mathews*, "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail"; *Mathews* v. *Eldridge*, supra, 424 U.S. 335; also favors the petitioner. Because the additional procedures requested by the respondent could not have affected the result, any additional burden on the trial court was not warranted. We conclude, therefore, that the Appellate Court properly determined that the trial court did not violate the respondent's due process rights when it denied the respondent's request for a transcript of the trial and a continuance so that he could recall witnesses and respond to the evidence.

In reaching this conclusion, we are mindful of the compelling interests that are at stake in proceedings to terminate parental rights. We emphasize that, when an incarcerated respondent's request for a transcript and for a continuance is accompanied by a credible claim that the respondent could rebut the petitioner's evidence if given the opportunity, and when granting the request would be consistent with the orderly administration of justice, the trial court ordinarily should provide these important procedural safeguards. Cf. *In re Juvenile Appeal (Docket No. 10155)*, supra, 187 Conn. 437, 440–41 (requirements of due process were satisfied when incarcerated respondent was allowed to review transcript of initial day of hearing on petition for termination of parental rights and then allowed to testify by telephone on second day of hearing). It is clear to us, however, that the present case is not such a case.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.