******************************************************************

   The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

   This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

# IN RE KIARA LIZ V.*
## (AC 44264)

Alvord, Elgo and Alexander, Js.

*Syllabus*

The respondent father appealed to this court from the judgment of the trial court terminating his parental rights with respect to the minor child, K. The court conducted a trial on the termination of parental rights petition and the father was not present on the last day of trial. Counsel for the father requested a continuance on the basis of the father's absence, which the court denied. *Held*:

1. This court declined to review the respondent father's unpreserved claim that his right to due process was violated when the trial court denied his request for a continuance, as the record of his claim was inadequate for review under *State* v. *Golding* (213 Conn. 233); the father's reasons for his failure to attend the final day of the trial were vague and unclear, and speculation and conjecture have no place in appellate review.

2. The trial court did not err in its determination that the termination of the respondent father's parental rights was in K's best interest, as its conclusion was based on its findings related to the seven statutory (§ 17a-112 (k)) factors, which have not been challenged in this appeal, including the father's difficulty accepting and understanding his mental illness, his inability to comply with mental health treatment, and his failure to make progress in his parenting abilities; moreover, the existence of a bond between the father and K, although relevant, was not dispositive of a best interest determination, and the father's claims that he had been appropriate with K and that she responded to him, did not provide grounds to reverse the trial court's judgment.

Argued February 17—officially released March 30, 2021**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to the minor child, brought to the Superior Court in the judicial district of Waterbury, Juvenile Matters, where the matter was transferred to the judicial district of Middlesex, Child Protection Session, and tried to the court, *Crawford, J.*; judgment terminating the respondents' parental rights, from which the respondent father appealed to this court. *Affirmed.*

*David B. Rozwaski*, assigned counsel, for the appellant (respondent father).

*Carolyn A. Signorelli*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Evan O'Roark*, assistant attorney general, for the appellee (petitioner).

*Opinion*

ALEXANDER, J. The respondent father, Luis V., appeals from the judgment of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families (commissioner), terminating his parental rights as to his minor child, Kiara Liz V. (Kiara), pursuant to General Statutes § 17a-112. On appeal, the respondent claims that the court (1) improperly denied his request for a continuance and (2) erred in determining that the termination of his parental rights was in the best interests of Kiara. We disagree, and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our consideration of the respondent's appeal. Kiara was born in October, 2016, and the commissioner took custody of her shortly thereafter. On December 5, 2017, the court found Kiara to be neglected. On June 22, 2018, the commissioner moved to terminate the parental rights of the respondent and Kiara's mother.[1]

The court, *Crawford, J.*, conducted a four day trial in December, 2019.[2] The court noted that the respondent's parental rights had been terminated with respect to three other children on the basis of his failure to rehabilitate. See General Statutes § 17a-112 (j) (3) (E).[3] It also observed that there had been two prior determinations that the Department of Children and Families (department) had made reasonable efforts at reunification.

The court then addressed the statutory ground of failure to rehabilitate alleged in the petition to terminate the respondent's parental rights. See General Statutes § 17a-112 (j) (3) (E).[4] It noted that the department "has been involved with [the respondent] because of his extensive criminal history, including gang related activities, a history of violence including accusations of being involved in two murder charges which resulted in convictions for assault in the first degree, the physical and sexual abuse of his four older children, the sale and distribution of illegal drugs, and violation of probation. One of the [respondent's] daughters has a permanent disfigurement on her hand, the result of [the respondent] submerging her hand in boiling water after she denied him sexual intercourse."

The court also detailed the respondent's mental health issues. Prior to an evaluation that occurred in October, 2016, "[the respondent] had been treated . . . for schizoaffective disorder, polysubstance abuse, and personality disorder not otherwise specified. . . . The underlying issues included inhaling glue as a child and abuse of [V]alium as an adult, and purchasing [X]anax on the street. He has had at least twelve suicide attempts, and admitted to being suicidal, self-injurious, fire setting, and having homicidal thoughts or behaviors and hearing voices since age seventeen."

In 2015, the respondent's clinician expressed concern

for his untreated mental health issues and his unaddressed sexual and physical abuse of his older daughters. The respondent indicated that he was receiving mental health treatment, but the clinician was unable to verify his compliance with such treatment or medication. He also refused referrals for further treatment. In January, 2016, he did resume treatment following referrals from the department.

On November 30, 2016, approximately one month after Kiara's birth, Ines Schroeder, a clinical and forensic psychologist, performed a psychological examination of the respondent. Schroeder opined that the respondent demonstrated cognitive deficits and difficulty in processing information. She further noted that his blunted mood and affect was consistent with his prior diagnosis of schizophrenia or schizoaffective disorder. The respondent reported regular hallucinations that occurred twice per day, as well as homicidal and suicidal ideation. Schroeder indicated that, in her opinion, the respondent failed to recognize safety concerns and was unable to maintain his mental health, which made it unlikely that he was capable of caring for Kiara. Schroeder stated that the respondent would need to demonstrate engagement in long-term treatment and demonstrate mental health stability for at least one year in order to demonstrate the ability to parent. The department continued to arrange mental health treatment for the respondent, but his inconsistent attendance and sporadic compliance with his medication regimen resulted in little progress by July 29, 2019. The respondent's failure to be compliant with the offered mental health services prevented the department from providing him with a referral for parenting education. Ultimately, the court concluded: "Many of [the respondent's] service providers worked to assist him with addressing the issues that impede his ability to parent [Kiara]. [Two of the providers] also identified the efforts [the respondent] would have to make to be a parent to [Kiara], and [the respondent] has failed to make those efforts."

The court then proceeded to the dispositional phase and the best interests of the child analysis.[5] In considering the relevant statutory factors, the court first determined that the respondent had "difficulty accepting and understanding his mental illness. He has not complied with treatment and failed to be consistent in order to make progress in his ability to be a parent." The court found that the respondent never prepared a home for Kiara and failed to change his lifestyle so that he could gain custody of her. The court observed that the respondent had not been prevented from having a meaningful relationship with Kiara and that his inability to "get [himself] to a place to parent [Kiara]" was the result of his actions or failures to act. The court found that Kiara, who never had been in the care and custody of the respondent, did not recognize the respondent as her

father. The court then concluded, on the basis of clear and convincing evidence, that termination of the respondent's parental rights was in the best interests of Kiara. This appeal followed.[6]

I

The respondent first claims that the court improperly denied his request for a continuance. He claims that the court's denial of a request for a continuance on the last day of trial prevented him from testifying and constituted a denial of his due process rights. The petitioner counters, inter alia, that the respondent failed to preserve this claim and cannot satisfy the first prong of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). We agree with the petitioner.

The following additional facts are necessary for our discussion. The respondent attended the first three days of the trial.[7] At the outset of the proceedings on December 30, 2019, the respondent's counsel informed the court of the respondent's absence. Specifically, the respondent's counsel stated: "Your Honor, if I may just, briefly—address—my client's [absence] today, that he had—had indicated that he was not able to secure transportation to court this morning. Given . . . that the length of time this case had been pending, I—I indicated to him I didn't think the court would grant a continuance. I—I did tell him I would, at least, raise that issue for the court to consider, so I'm doing that right now." The court confirmed on the record with the respondent's counsel that the respondent had been present for the previous court date. The following colloquy then occurred between the court and the parties:

"The Court: And, so, he was aware of this date and did he make any contact with you?

"[The Respondent's Counsel]: He did not. He did not. I believe he may have made some phone calls to me this morning, but on my way to court I don't—

"The Court: What do you mean you believe he may have—

"[The Respondent's Counsel]: He indicated on the phone that he tried—

"The Court: —because did he have any contact—

"[The Respondent's Counsel]: —to contact me this morning—

"The Court: —to you?

"[The Respondent's Counsel]: —probably, right before court. I had contact [with] him as well before court. That's when I learned of his transportation issues. But he was aware of this court date. We had spoken about it and I had provided him the date and, over the holiday we had—well, he was aware, so—

"The Court: Okay. All right. Then it appears he did not make the necessary arrangements to be present and may I inquire—because I believe the department will provide transportation when necessary—did either the [assistant attorney general] or social worker receive any contact from [the respondent] concerning the need for transportation to court?

"[Assistant Attorney General]: No, Your Honor.

"[Social Worker]: No, Your Honor.

"The Court: Ok. All right. Sit down and we'll proceed."

Shortly thereafter, the parties rested. At no point during the final day's proceedings did the respondent's counsel make any further comments or arguments regarding the respondent's absence nor did the respondent's counsel file any posttrial motions requesting to open the hearing in order to present further evidence or testimony regarding the respondent's absence.

On appeal, the respondent argues, for the first time, that "[t]he failure to grant trial counsel's continuance request or make alternative arrangements for the [respondent] to be present for the last day of trial, deprived the [respondent] of his fundamental due process rights in trying to have a fair trial to protect his parental rights. Accordingly, the trial court erred in denying [the respondent's] trial counsel's request for a continuance so that the [respondent] could appear and testify and participate in the last day of trial."

Although the respondent noted in his appellate brief that his trial counsel had requested a continuance,[8] he requests review pursuant to *State* v. *Golding*, supra, 213 Conn. 233.[9] "The test set forth in *Golding* applies in civil as well as criminal cases." (Internal quotation marks omitted.) *Gleason* v. *Smolinski*, 319 Conn. 394, 402 n.10, 125 A.3d 920 (2015); *In re Tremaine C.*, 117 Conn. App. 521, 528 n.9, 980 A.2d 317, cert. denied, 294 Conn. 920, 984 A.2d 69 (2009). Pursuant to the *Golding* doctrine, we may review an unpreserved claim "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Castro*, 200 Conn. App. 450, 456–57, 238 A.3d 813, cert. denied, 335 Conn. 983, 242 A.3d 105 (2020); see also *In re Miyuki M.*, 202 Conn. App. 851, 858–59,       A.3d (2021).

In *State* v. *Brunetti*, 279 Conn. 39, 54, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007), our Supreme Court observed that, "unless the defendant has satisfied the first *Golding* prong, that is, unless the defendant has demonstrated that the record is adequate for appellate review, the appellate tribunal will not consider the merits of the defendant's claim." It further explained that "[t]he reason for this requirement demands no great elaboration: in the absence of a sufficient record, there is no way to know whether a violation of constitutional magnitude in fact has occurred." Id., 55. More recently, in *In re Azareon Y.*, 309 Conn. 626, 635, 72 A.3d 1074 (2013), our Supreme Court noted that our appellate courts "will not address an unpreserved constitutional claim [i]f the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred . . . ." (Internal quotation marks omitted.); see also *In re Anthony L.*, 194 Conn. App. 111, 114, 219 A.3d 979 (2019) (respondent bears burden of providing sufficient record for *Golding* review and appellate courts will not attempt to supplement or reconstruct record to make factual determinations in order to decide claim), cert. denied, 334 Conn. 914, 221 A.3d 447 (2020).

The record in the present case contains scant details regarding the respondent's absence from the final day of trial. The respondent's attorney informed the court that the respondent was not able to attend the court proceedings because of a transportation issue and acknowledged that the respondent was aware of the trial date. Both the petitioner's counsel and a social worker indicated that they were not aware of any request made by the respondent for assistance with transportation. Additionally, we note that the trial concluded on December 30, 2019, and the court issued its memorandum of decision on August 7, 2020. In the intervening seven months, the respondent never moved to open the evidence with an offer of proof regarding the reasons for his absence and the evidence he would have presented. See, e.g., *In re Lukas K.*, 300 Conn. 463, 473–74, 14 A.3d 990 (2011) (respondent father gave no indication to trial court by offer of proof or otherwise as to additional evidence he would have presented or attempted to elicit from commissioner's witnesses had he been given copy of transcript and continuance to respond to evidence).

We are mindful that "[t[he right of a parent to raise his or her children has been recognized as a basic constitutional right." (Internal quotation marks omitted.) *In re Tremaine C.*, supra, 117 Conn. App. 529; see also *In re Natalie S.*, 325 Conn. 833, 846–47, 160 A.3d 1056 (2017); *In re Adrian K.*, 191 Conn. App. 397, 411, 215 A.3d 1271 (2019). However, just as a defendant in a criminal trial may waive his or her constitutional rights

by a voluntary and deliberate absence from the trial, "a respondent in a parental rights termination proceeding may waive [his] right . . . by deliberate absence." *In re Jason M.*, 140 Conn. App. 708, 718, 59 A.3d 902, cert. denied, 308 Conn. 931, 64 A.3d 330, cert. denied sub nom. *Charline P.* v. *Connecticut Dept. of Children & Families*, 571 U.S. 1079, 134 S. Ct. 701, 187 L. Ed. 2d 564 (2013).

Given this record, the respondent's reason or reasons for his failure to attend the final day of the trial are vague and unclear. See, e.g., *In re Anthony L.*, supra, 194 Conn. App. 119–20. We frequently have stated that "speculation and conjecture have no place in appellate review." *In re Samantha S.*, 120 Conn. App. 755, 759, 994 A.2d 259 (2010), appeal dismissed, 300 Conn. 586, 15 A.3d 1062 (2011); see also *Magsig* v. *Magsig*, 183 Conn. App. 182, 196, 191 A.3d 1053 (2018). Given the evidentiary lacuna regarding the respondent's absence from the last day of trial, there is an inadequate record to review this appellate claim. We conclude, therefore, that the respondent failed to satisfy the first prong of *Golding*, and, we must decline to review this claim.

## II

The respondent next claims that the court's finding that termination of his parental rights was in Kiara's best interests was clearly erroneous.[10] He argues that the evidence at trial showed that he "was affectionate toward his daughter, that he expressed concern for her health and well-being by feeding her and changing her diapers, and that he would bring clothing and gifts for her, and although his child was not in his care and custody, he did engage appropriately with her" and, therefore, the court erred in concluding that termination of his parental rights was in Kiara's best interests. We disagree.

"If the trial court determines that a statutory ground for termination exists, then it proceeds to the dispositional phase. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]. . . . The seven factors serve simply as guidelines for the court and are not statutory prerequisites that need to be proven before termination can be ordered. . . . There is no requirement that each factor be proven by clear and convincing evidence. . . . In the dispositional phase . . . the emphasis appropriately shifts from the conduct of the parent to the best interest of the child. . . . The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [his or her] environment. . . .

Because a respondent's fundamental right to parent his or her child is at stake, [t]he statutory criteria must be strictly complied with before termination can be accomplished and adoption proceedings begun." (Citations omitted; footnote omitted; internal quotation marks omitted.) *In re Malachi E.*, 188 Conn. App. 426, 434–36, 204 A.3d 810 (2019); see also *In re Anaishaly C.*, 190 Conn. App. 667, 689–90, 213 A.3d 12 (2019).

This court will overturn a determination that termination of parental rights is in the best interests of a child only if the court's findings are clearly erroneous. See *In re Walker C.*, 195 Conn. App. 604, 610–11, 226 A.3d 175 (2020). "It is axiomatic that a trial court's factual findings are accorded great deference. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [Additionally] [o]n appeal, our function is to determine whether the trial court's conclusion was factually supported and legally correct. . . . In doing so, however, [g]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) Id., 612; see also *In re Malachi E.*, supra, 188 Conn. App. 443.

This court has observed that the existence of a bond between a parent and a child, while relevant, is not dispositive of a best interest determination. See *In re Anaishaly C.*, supra, 190 Conn. App. 693. After our careful review of the evidence and the memorandum of decision, we cannot conclude that the trial court's findings in the determination of Kiara's best interests were clearly erroneous. The court's conclusion was based on its findings related to the seven statutory factors, which have not been challenged on appeal, including the respondent's difficulty accepting and understanding his mental illness, his inability to comply with mental health treatment, and his failure to make progress in his parenting abilities. The facts highlighted in the respondent's brief, including that he has "always been appropriate" with Kiara and that she "has been responsive to him" do not provide grounds to reverse the trial court. "We decline the respondent's invitation to place more emphasis on certain of the court's findings so that we might reach a conclusion on appeal that differs from that of the trial court." *In re Malachi E.*, supra, 188 Conn. App. 446.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142

(b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** March 30, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Kiara's mother did not appear at trial. The court concluded that the Department of Children and Families had made reasonable efforts at reunification and had proved, by clear and convincing evidence, the statutory grounds of failure to rehabilitate pursuant to § 17a-112 (j) (3) (E) and abandonment pursuant to § 17a-117 (j) (3) (A). The court then determined that it was in Kiara's best interests to terminate her mother's parental rights. Kiara's mother is not a party to the present appeal.

[2] "A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interest of the child. . . . In the adjudicatory phase of the proceeding, the court must make separate determinations as to reasonable efforts and the statutory grounds for termination. In the adjudicatory phase, the judicial authority is limited to evidence of events preceding the filing of the petition or the latest amendment, except where the judicial authority must consider subsequent events as part of its determination as to the existence of a ground for termination of parental rights. . . . In the adjudicatory phase, the court may rely on events occurring after the date of the filing of the petition to terminate parental rights when considering the issue of whether the degree of rehabilitation is sufficient to foresee that the parent may resume a useful role in the child's life within a reasonable time." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *In re Kyara H.*, 147 Conn. App. 855, 865, 83 A.3d 1264, cert. denied, 311 Conn. 923, 86 A.3d 468 (2014); see also *In re Phoenix A.*, 202 Conn. App. 827, 837–38,    A.3d    (2021).

[3] General Statutes § 17a-112 (j) (3) (E) provides: "[T]he parent of a child under the age of seven years who is neglected, abused or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the [commissioner] . . . ."

[4] "During the adjudicatory phase [of a proceeding to terminate parental rights], the trial court must determine whether one or more of the . . . grounds for termination of parental rights set forth in § 17a-112 [(j) (3)] exists by clear and convincing evidence. The [petitioner] . . . in petitioning to terminate those rights, must allege and prove one or more of the statutory grounds. . . . Subdivision (3) of § 17a-112 (j) carefully sets out . . . [the] situations that, in the judgment of the legislature, constitute countervailing interests sufficiently powerful to justify the termination of parental rights in the absence of consent. . . . Because a respondent's fundamental right to parent his or her child is at stake, [t]he statutory criteria must be strictly complied with before termination can be accomplished and adoption proceedings begun." (Internal quotation marks omitted.) *In re November H.*, 202 Conn. App. 106, 116–17, 243 A.3d 839 (2020); see *In re Cameron W.*, 194 Conn. App. 633, 660, 221 A.3d 885 (2019), cert. denied, 334 Conn. 918, 222 A.3d 103 (2020); see also *In re Gabriel C.*, 196 Conn. App. 333, 359, 229 A.3d 1073 (failure of parent to achieve sufficient personal rehabilitation is one of statutory grounds on which court may terminate parental rights pursuant to § 17a-112), cert. denied, 335 Conn. 938,    A.3d    (2020).

[5] "If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the [parent's] parental rights is not in the best interests of the child. In arriving at that decision, the court is mandated to consider and make written findings regarding seven factors delineated in . . . § [17a-112 (k)]." (Internal quotation marks omitted.) *In re Phoenix A.*, supra, 202 Conn. App. 838.

[6] On December 11, 2020, the attorney for the child filed a letter with the court, pursuant to Practice Book § 67-13, adopting the brief of the petitioner.

[7] The termination of parental rights trial took place on the following dates:

December 9, 11, 13 and 30, 2019. On December 11, 2019, the second day of the trial, the parties discussed with the court the possibility of taking witnesses out of order. The court indicated it would consider permitting the respondent to testify before the petitioner's case had concluded. After consulting with the respondent, the respondent's counsel stated: "So, Your Honor, [the respondent] would like the opportunity to hear the state's testimony, all their witnesses before getting on the stand to testify. At—at one point, I thought we could do that but—if we had other witnesses. But, given that his testimony is critical so . . . ." The court then confirmed with the respondent's counsel that he would not call any witnesses until the petitioner's case had concluded.

[8] To the extent that the respondent contends that this issue was preserved before the trial court, we disagree. As stated previously, his counsel requested a continuance, which the trial court denied. We iterate that the respondent never raised the due process claim he now presents to this court, nor did the trial court consider it as such. Under these circumstances, "it is evident that the . . . [constitutional claim does not fit] within the parameters of this court's holding that it will hear a claim only if it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. *In re Candids E.*, 111 Conn. App. 210, 215 n.7, 958 A.2d 229 (2008)." (Internal quotation marks omitted.) *In re Lukas K.*, 120 Conn. App. 465, 471, 992 A.2d 1142 (2010), aff'd, 300 Conn. 463, 14 A.3d 990 (2011).

[9] The respondent also asserts that we may "consider" plain error review, "utilize" our supervisory authority or consider the issue of "judicial integrity as well as maintaining the public's confidence in judicial proceedings in termination of parental rights cases." We decline to do so in the absence of any analysis of why these methods of review should be employed in the present case. See *In re Omar I.*, 197 Conn. App. 499, 587 n.28, 231 A.3d 1196 (analysis, rather than abstract assertion, is required to avoid abandoning issue), cert. denied, 335 Conn. 924, 233 A.3d 1091, cert. denied sub nom. *Ammar I.* v. *Connecticut*, U.S. , 141 S. Ct. 956, L. Ed. 2d (2020); see, e.g., *State* v. *Monahan*, 125 Conn. App. 113, 124–25, 7 A.3d 404 (2010) (Appellate Court will not engage in plain error analysis on basis of inadequate brief), cert. denied, 299 Conn. 926, 11 A.3d 152 (2011). Additionally, we note that these doctrines are reserved for extraordinary circumstances that are not implicated by the present case. See, e.g., *In re Miyuki M.*, 202 Conn. App. 851, 858, A.3d (2021).

[10] On appeal, the respondent does not challenge the trial court's determination that a statutory ground, namely, the failure to rehabilitate, existed for the termination of his parental rights.

---