******************************************************************

    The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

    This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

## IN RE SEQUOIA G. ET AL.*
## (AC 44346)

Elgo, Suarez and DiPentima, Js.

*Syllabus*

The respondent mother appealed to this court from the judgments of the trial court terminating her parental rights as to her minor children, S, B and A. She claimed that the court improperly found that it was in the best interests of the children to terminate her parental rights. *Held* that there was ample evidence to support the trial court's conclusion that termination of the mother's parental rights was in the best interests of the minor children as the court's findings as to the children's best interests, made pursuant to statute (§ 17a-112 (k)), were factually supported and legally sound, such that this court would not substitute its judgment for that of the trial court: it was not inappropriate for the court to have considered, as to the emotional ties factor in § 17a-112 (k) (4), the bond between the children and their foster parents, and, although the court did not specifically discuss the feelings and emotional ties of the children with respect to the mother when stating its findings, it did not follow that the court failed to consider those feelings and ties, as reading the court's decision as a whole revealed that the court considered them and that it determined that the children and the mother did not have a strong bond; moreover, when the court's decision was read as a whole, the court's factual findings supported its conclusion under § 17a-112 (k) (3) that the mother had not complied with her obligations in connection with certain of the court's orders, including that it was not clearly erroneous for the court to find that she had not fulfilled her obligations regarding visitation with the children; furthermore, as to A, the mother did not direct this court to any case law indicating that a court has an obligation, sua sponte, to consider a less onerous means of achieving permanency planning in the absence of a motion specifically seeking an alternative permanency plan, and, because the issue of whether a transfer of guardianship was appropriate for A was never raised in the trial court, it made no findings regarding whether such a transfer was in A's best interest and a more appropriate disposition for A than the one approved by the court.

Argued April 8—officially released June 8, 2021**

*Procedural History*

Petitions by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor children, brought to the Superior Court in the judicial district of Litchfield at Torrington, Juvenile Matters, where the matter was tried to the court, *Hon. Joseph W. Doherty*, judge trial referee; judgments terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Affirmed.*

*David B. Rozwaski*, assigned counsel, for the appellant (respondent mother).

*Benjamin A. Abrams*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Evan O'Roark*, assistant attorney general, for the appellee (petitioner).

*Joseph A. Geremia, Jr.*, for the minor children.

*Opinion*

DiPENTIMA, J. The respondent mother, Michelle L., appeals from the judgments of the trial court terminating her parental rights with respect to her minor children, Sequoia, Benjamin and Anice.[1] On appeal, the respondent claims that the court improperly found that it was in the best interests of the children to terminate her parental rights. We disagree with the respondent and, accordingly, affirm the judgments of the trial court.

The following facts, which the court found by clear and convincing evidence, and procedural history, are relevant. "The family has an extensive history with [the Department of Children and Families (department)]. . . . On July 31, 2008, neglect petitions were filed with the Superior Court for juvenile matters with regard to Sequoia, Tevvon and Benjamin. The children were adjudicated neglected and a disposition of protective supervision was entered on April 29, 2009, and expired on June 17, 2009. On March 30, 2012, a ninety-six hour hold was invoked with regard to Sequoia, Tevvon, Benjamin and Anice. The hold was vacated on April 3, 2012. On April 8, 2012, neglect petitions were filed with the Superior Court for juvenile matters . . . regarding Sequoia, Tevvon, Benjamin and Anice. The children were adjudicated neglected and a disposition of protective supervision was entered on November 14, 2012, and expired on May 14, 2013. . . . Following a team meeting . . . the department was concerned about Sequoia returning to the care of either parent. She was placed in a therapeutic foster home.

"On November 21, 2016, Tevvon, Benjamin and Anice were removed from the father's care through an [order of temporary custody] . . . . Protective supervision of those three children was vested in the respondent. On January 26, 2017, and January 27, 2017, [the department] received referrals regarding the children's safety in [the respondent's] home. When [the department] responded to those referrals, [the respondent] reportedly yelled, screamed and used profanity. Tevvon, Benjamin and Anice were removed from her custody pursuant to a ninety-six hour hold on January 27, 2017. On January 30, 2017, an order of temporary custody was filed and granted. On March 30, 2018, the court granted a motion to modify the protective supervision to commitment regarding Tevvon, Benjamin and Anice. All three children were committed to [the custody of the petitioner, the Commissioner of Children and Families]. On April 23, 2018, [the petitioner] filed with the court four petitions for termination of parental rights regarding Sequoia, Tevvon, Benjamin and Anice." On September 24, 2019, prior to the start of evidence, the petitioner moved to withdraw [her] termination of parental rights petition as to Tevvon and, instead, filed a motion for permanent transfer of guardianship seeking to vest guardianship of Tevvon in his foster father, Gary R.

In its memorandum of decision, filed August 28, 2020, the court noted that the trial took place over the course of five days. The court stated that, despite having proper notice, the respondent was not present for trial and did not present any evidence or testimony to refute the grounds alleged in the termination of parental rights petitions. The court noted that, according to her counsel, the respondent was in Indiana. The court granted the petitioner's petition for a permanent transfer of guardianship as to Tevvon and appointed Gary R., as his permanent legal guardian.

The court found in the adjudicatory phase, by clear and convincing evidence, that the department made reasonable efforts at reunification; see General Statutes § 17a-112 (j) (1); and that the respondent had failed to achieve a sufficient degree of personal rehabilitation within the meaning of § 17a-112 (j) (3) (B).[2] The court proceeded to the dispositional phase, in which it determined that it was in the best interests of Sequoia, Benjamin and Anice that the respondent's parental rights be terminated with respect to those three children. This appeal followed.

On appeal, the respondent does not challenge either the conclusions the court made during the adjudicatory phase or the court's decision to transfer permanent guardianship as to Tevvon.[3] Her sole claim on appeal concerns the findings and conclusions made by the court during the dispositional phase, with respect to Sequoia, Benjamin and Anice. We do not agree with the respondent.

The following legal principles and standard of review guide our analysis. "This court will overturn a determination that termination of parental rights is in the best interests of a child only if the court's findings are clearly erroneous." *In re Kiara Liz V.*, 203 Conn. App. 613, 626, 248 A.3d 813 (2021).[4] "In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of the child. . . . The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [the child's] environment. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]. . . . The seven factors serve simply as guidelines for the court and are not statutory prerequisites that need to be proven before termination can be ordered. . . . There is no requirement that each factor be proven by clear and convincing evidence." (Footnote omitted; internal quotation marks omitted.) *In re Joseph*

*M.*, 158 Conn. App. 849, 868–69, 120 A.3d 1271 (2015); see also General Statutes § 17a-112 (k).[5]

The court made findings pursuant to each of the seven statutory factors in § 17a-112 (k) before determining, by clear and convincing evidence, that termination of the respondent's parental rights was in the best interests of Sequoia, Benjamin and Anice, who at the time of the court's decision were fifteen, twelve and nine years old, respectively. The respondent challenges the court's findings as to two of these factors.

The respondent argues regarding the emotional ties factor, § 17a-112 (k) (4), that the court did not comment on the relationship between the children and her, but rather focused solely on the relationship between the foster parents and the children. She contends that the court ignored the testimony of Anice's foster parent, Gary R., that she had weekly phone contact with the respondent and had expressed that she would like to live with the respondent or her father and, if that is not possible, she would like to continue living with Gary R.[6] We are not persuaded.

The court found as to the emotional ties factor that Benjamin has a positive relationship with his foster parents and Sequoia has a positive relationship with her foster mother, whom she approaches readily for affection and care. The court found that Anice would like to be adopted by Gary R. if she cannot return to her biological parents.

It was not inappropriate for the court to have considered the bond between the children and their foster parents. The plain language of § 17a-112 (k) (4) provides that the trial court shall consider and make written findings regarding "the feelings and emotional ties of the child . . . to . . . any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties . . . ." The court's findings as to the emotional ties factor indicate that the three children had been in their placements for more than one year at the time of its decision. In *In re Nevaeh W.*, 317 Conn. 723, 731–33, 120 A.3d 1177 (2015), our Supreme Court stated that "[n]othing in [§ 17a-112 (k) (4)], however, required the trial court to consider only the children's emotional ties with the respondent. . . . To the contrary, this court has repeatedly recognized that, in the dispositional stage, it is appropriate to consider the importance of permanency in children's lives. . . . Indeed . . . [i]n regard to children who have bonded with their foster parents, [o]nce new psychological relationships form, separation from the new parents becomes no less painful and no less damaging to a child than separation from natural or adoptive caregiving parents. . . . Termination of a biological parent's rights, by preventing further litigation with that parent, can preserve the stability a child has acquired in a

successful foster placement and, furthermore, move the child closer toward securing permanence by removing barriers to adoption." (Citations omitted; internal quotation marks omitted.)

Although the court did not specifically discuss the feelings and emotional ties of the children with respect to the respondent when stating its findings regarding § 17a-112 (k) (4), it does not follow that the court failed to consider those feelings and ties. Our Supreme Court stated in *In re Nevaeh W.*, that, "in considering the trial court's findings pursuant to § 17a-112 (k) (4), we are mindful that an opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding" and determined that even though the trial court did not specifically mention the emotional ties between the children and the respondent in its statutory findings during the dispositional phase, that the memorandum of decision, when read as a whole, indicated that the court considered the children's emotional ties to the respondent. Id., 733.

In the present case, reading the court's decision as a whole reveals that the court considered the feelings and emotional ties the children had with the respondent. The court found that the respondent relocated to Indiana and visited one time in one year. The court also found that the respondent had difficulties "managing the children's behaviors during visits, as they were frequently arguing and fighting. She struggles with basic conversation and affection with the children, and needs to demonstrate active engagement in their lives and show interest in their well-being. . . . [The respondent] participated in the updated court-ordered psychological evaluations with [Jessica] Biren Caverly, [a psychologist], in August, 2017. . . . It was reported that [the respondent] consistently demonstrates emotional coldness, detachment and flattened affect, especially in interactions with the children. . . . It was reported that the parents cannot appreciate the traumatic environment they created for their children and how it can impact children long after removal from their home. It [was] reported that neither [the respondent] nor the father demonstrated any significant engagement or bond with the children." The court further determined that Anice's desire to live with the respondent or her father is "not realistic or possible." The court also found that "Tevvon, Benjamin and Anice look to their older sisters Azelia and Sequoia more readily as parental and attachment figures tha[n] they do to either of their parents." It is clear from these findings that the court determined that the children did not have a strong bond with the respondent. Even if, however, such a bond were present, "the existence of a bond between a parent and a child, while relevant, is not dispositive of a best interest determination." *In re Kiara Liz V.*, supra, 203 Conn. App. 626.

The respondent's next argument concerns the court's findings regarding the extent to which she had fulfilled her obligations in connection with the orders of the court. See General Statutes § 17a-112 (k) (3). The following relevant specific steps were ordered by the court to facilitate reunification and agreed to by the respondent: "Keep all appointments set by or with [the department]. Cooperate with [the department's] home visits, announced or unannounced, and visits by the child(ren)'s court-appointed attorney and/or guardian ad litem. . . . Visit the child(ren) as often as [the department] permits." See *In re Shane M.*, 318 Conn. 569, 587, 122 A.3d 1247 (2015) (specific steps constitute order of court). The court found, inter alia, that the respondent had not fulfilled these court-ordered obligations.

The respondent contends that, because she has resided out of state, "it is unlikely that the [department] or the children's attorney and/or guardian[s] ad litem would conduct home visits. Regarding visitation with the children, the [respondent] did visit with the children when she was living in [Connecticut] and when she is able to make trips now back to [Connecticut], she arranges for visits with the children and, more importantly, she has weekly phone contact with the children." We are not persuaded by this argument.

When reading the court's decision as a whole, the court's factual findings support its conclusion that the respondent had not complied with the court orders at issue. The court found that, although the department had offered supervised visitation, the respondent did not continue visitation with Sequoia, Benjamin or Anice, but "left her children behind" and moved to Indiana. Evidence presented at trial supports this finding. A social worker with the department testified that after the respondent moved to Indiana in June, 2018, she had supervised visits with some or all three of the children in January, 2019, and June, 2019. A "Social Study in Support of Petition for Termination of Parental Rights,"[7] dated April 16, 2018, which was admitted as a full exhibit at trial, indicates that the respondent has not been consistent in keeping appointments with the department and has refused to permit the department to conduct home visits since November, 2017. In that social study, it was noted that the respondent has visited with the children, but struggled with appropriately parenting the children during visits. A subsequent "Social Study in Support of Permanency Plan," dated July 1, 2019, which was admitted as a full exhibit at trial, stated that the respondent had visited the children twice since she moved to Indiana in June, 2018. The court also had before it evidence of the children's varying degrees of phone contact with the respondent. The July 1, 2019 social study noted that Benjamin communicates with the respondent "a few times a month" on the phone, that Anice "does not communicate often on the phone"

with the respondent and that Sequoia talks to the respondent weekly on the phone.

Particularly in light of the evidence that the respondent refused to allow the department to conduct home visits since November, 2017, and that she has visited with the children only twice in person since moving to Indiana in June, 2018, it was not clearly erroneous for the court to find that she had not fulfilled her obligations in connection with the court orders regarding visitation with the children.

Although the respondent did not file a motion for transfer of guardianship as to Anice, she additionally argues that the court erred in finding that it was in Anice's best interest to terminate the respondent's parental rights with respect to her because Anice, who resides in the same household as Tevvon, "would probably be happy" with a permanency plan similar to that of Tevvon, wherein guardianship would be transferred to Gary R. She contends that Gary R. testified that he would be willing to be a permanent resource for Anice and that terminating her parental rights with respect to Anice would subject her to further disruption wherein she would be removed from the home she lives in with Tevvon.

The respondent has not directed us to any case law indicating that a court has an obligation, sua sponte, to consider a "less onerous means of achieving permanency planning" in the absence of a motion specifically seeking an alternative permanency plan. Rather, our statutory scheme provides as follows: "A permanency plan is the proposal for what the long-term, permanent solution for the placement of the child should be. General Statutes §§ 17a-111b (c) and 46b-129 (k). Our statutory scheme provides five permanency options: (1) reunification with a parent; (2) long-term foster care; (3) permanent guardianship; (4) transfer of either guardianship or permanent guardianship; or (5) termination followed by adoption. General Statutes §§ 17a-111b (c) and 46b-129 (k) (2). If during the course of the juvenile proceedings the child is placed in the care and custody of the petitioner . . . the petitioner must file a motion for review of a permanency plan within nine months of that placement. General Statutes § 46b-129 (k) (1) (A). When the petitioner files a motion to review a permanency plan, the respondent parents and qualifying relatives may file a motion in opposition to the proposed plan. General Statutes § 46b-129 (k) (1) (A). If the permanency plan is opposed, the court must hold an evidentiary hearing, at which [t]he commissioner shall have the burden of proving that the proposed permanency plan is in the best interests of the child or youth. General Statutes § 46b-129 (k) (1) (A). After the hearing, the court shall approve a permanency plan that is in the best interests of the child . . . and takes into consideration the child's . . . need for per-

manency. General Statutes § 46b-129 (k) (2). If the trial court approves a permanency plan of termination followed by adoption, the petitioner shall file a petition for termination of parental rights not later than sixty days after such approval if such petition has not previously been filed . . . . General Statutes § 46b-129 (k) (6) (A)." (Footnotes omitted; internal quotation marks omitted.) *In re Adelina A.*, 169 Conn. App. 111, 121–23, 148 A.3d 621, cert. denied, 323 Conn. 949, 169 A.3d 792 (2016).

The respondent filed a motion in opposition to the proposed permanency plan in which she stated that it was in the best interests of the children that they be reunited with her, and she did not request a permanent transfer of guardianship as to Anice. Because the issue of whether a transfer of guardianship was appropriate for Anice was never raised in the trial court, it made no findings regarding whether a transfer of guardianship was in Anice's best interests and a more appropriate disposition *for Anice* than the one approved by the court. See, e.g., *In re Azareon Y.*, 309 Conn. 626, 633–39, 72 A.3d 1074 (2013) (when respondent did not request trial court to consider alternatives to petitioner's permanency plan, record on appeal was inadequate to review substantive due process claim). We cannot review this aspect of the respondent's best interest claim because it was not raised in the trial court and no exceptional circumstances exist. "It is well settled that [o]ur case law and rules of practice generally limit [an appellate] court's review to issues that are distinctly raised at trial. . . . [O]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Citations omitted; internal quotation marks omitted.) *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 142, 84 A.3d 840 (2014); see also *In re Skylar B.*, 204 Conn. App. 729, 745,      A.3d      (2021) (only properly filed motion provides requisite notice to all interested parties and court of alternative disposition as well as evidence relevant for court to evaluate merits of transfer of guardianship versus termination of parental rights and adoption).

In the present case, there was ample evidence to support the court's conclusion that termination of the respondent's parental rights was in the best interests of Sequoia, Benjamin and Anice. The respondent challenged the court's findings only as to two of the statutory factors; both challenges we have rejected. Moreover, even if the respondent were able to demonstrate

that error existed with respect to one or both of these factors, it would not necessarily affect our disposition of the appeal for "a trial court's determination of the best interests of a child will not be overturned on the basis of one factor if that determination is otherwise factually supported and legally sound." (Internal quotation marks omitted.) *In re Xavier H.*, 201 Conn. App. 81, 102, 240 A.3d 1087, cert. denied, 335 Conn. 981, 241 A.3d 705 (2020), and cert. denied, 335 Conn. 982, 241 A.3d 705 (2020). "The balancing of interests in a case involving termination of parental rights is a delicate task and, when supporting evidence is not lacking, the trial court's ultimate determination as to a child's best interest is entitled to the utmost deference. . . . Although a judge [charged with determining whether termination of parental rights is in a child's best interest] is guided by legal principles, the ultimate decision [whether termination is justified] is intensely human. It is the judge in the courtroom who looks the witnesses in the eye, interprets their body language, listens to the inflections in their voices and otherwise assesses the subtleties that are not conveyed in the cold transcript." (Internal quotation marks omitted.) *In re Davonta V.*, 285 Conn. 483, 497, 940 A.2d 733 (2008). We conclude that the court's findings as to the children's best interests are factually supported and legally sound and we will not substitute our judgment for that of the trial court.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** June 8, 2021, the date that this opinion was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The court also terminated the parental rights of the father with respect to these three children. Because the father is not participating in this appeal, we will refer in this opinion to the respondent mother as the respondent.

[2] "[A] hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights . . . exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase." (Internal quotation marks omitted.) *In re Alison M.*, 127 Conn. App. 197, 203–204, 15 A.3d 194 (2011).

[3] The petitioner filed a motion to strike portions of the respondent's appellate appendix that contained copies of documents that are dated after the close of evidence and after the court filed its memorandum of decision. All of the challenged documents pertain to Tevvon, and the respondent does not challenge the court's decision to transfer his permanent guardianship to Gary R. Because these documents are not evidence and, moreover, are not relevant to our resolution of the issues raised in this appeal, we do not consider them.

[4] The respondent acknowledges that reviewing courts apply a clearly erroneous standard to such claims, but invites us to apply a sufficiency of the evidence standard to our review of the court's best interest determination. See *In re Malachi E.*, 188 Conn. App. 426, 443–44 n.6, 204 A.3d 810 (2019) (declining to adopt evidentiary sufficiency standard of review to best interest determination as it is not used by our Supreme Court). The respondent, however, provides no law or analysis in support of her requested standard

of review. See *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003) (appellate courts not required to review issues improperly presented through inadequate brief).

[5] General Statutes § 17a-112 (k) provides in relevant part that, "in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption and Safe Families Act of 1997, as amended from time to time; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

[6] The respondent also argues that the court ignored the testimony of Gary R. that Tevvon had weekly phone contact with the respondent. Given that the court did not terminate the respondent's parental rights regarding Tevvon and that the respondent expressly stated in her brief that she was not contesting the court's transfer of guardianship regarding Tevvon, we do not address this argument.

[7] Pursuant to General Statutes § 45a-717 (e): "(1) The court may, and in any contested case shall, request the Commissioner of Children and Families . . . to make an investigation and written report to it, within ninety days from the receipt of such request. The report shall indicate the physical, mental and emotional status of the child and shall contain such facts as may be relevant to the court's determination of whether the proposed termination of parental rights will be in the best interests of the child, including the physical, mental, social and financial condition of the biological parents, and any other factors which the commissioner . . . finds relevant to the court's determination of whether the proposed termination will be in the best interests of the child. . . . (3) The report shall be admissible in evidence, subject to the right of a party to require that the person making it appear as a witness and be subject to examination."