******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# IN RE MACI S.*
## (AC 47485)

Alvord, Moll and Flynn, Js.

*Syllabus*

The respondent mother appealed from the judgment of the trial court rendered for the petitioner, the Commissioner of Children and Families, terminating her parental rights with respect to her minor child. She claimed, inter alia, that the court improperly determined that she was unable or unwilling to benefit from the reunification efforts of the Department of Children and Families. *Held*:

The trial court properly concluded that the respondent mother was unable or unwilling to benefit from the department's reunification efforts, as the evidence adduced at trial was sufficient to support the court's finding by clear and convincing evidence as required by statute (§ 17a-112 (j)).

Because this court concluded that the trial court properly found that the respondent mother was unable or unwilling to benefit from reunification services, this court declined to review the mother's claim regarding the trial court's alternative finding that the department made reasonable efforts to reunify.

The trial court properly found by clear and convincing evidence that the respondent mother failed to achieve a sufficient degree of personal rehabilitation within the meaning of § 17a-112 (j) (3) (B) (ii).

The trial court properly determined that the termination of the respondent mother's parental rights was in the best interest of the child, as the court's finding was factually supported and legally sound and this court will not substitute its judgment for that of the trial court.

Argued October 10—officially released December 19, 2024**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

** December 19, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Court in the judicial district of Tolland, Juvenile Matters at Rockville, where the respondent father was defaulted for failure to appear; thereafter, the matter was transferred to the judicial district of Middlesex, Child Protection Session at Middletown, and tried to the court, *Burgdorff, J.*; judgment terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Affirmed.*

*David B. Rozwaski*, assigned counsel, for the appellant (respondent mother).

*Angela M. Fierro*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Nisa Khan*, assistant attorney general, for the appellee (petitioner).

*Michelle A. Santos*, assigned counsel, for the minor child.

*Opinion*

FLYNN, J. The respondent mother,[1] Dayna L., appeals from the judgment of the trial court, rendered in favor of the petitioner, the Commissioner of Children and Families, terminating her parental rights with respect to her minor child, Maci S. On appeal, the respondent claims that the court improperly determined that (1) she was unable or unwilling to benefit from the reunification efforts of the Department of Children and Families (department), (2) she failed to achieve a sufficient degree of personal rehabilitation pursuant to General Statutes § 17a-112 (j) (3) (B),[2] and (3) the termination

---

[1] The parental rights of Joshua S., the biological father of Maci, also were terminated. He has not appealed and all references in this opinion to the respondent are to Dayna L. only.

[2] The respondent also claims that the court improperly concluded that she had abandoned Maci and had no ongoing parent-child relationship with her. We decline to review those claims because the trial court needs to find only one statutory ground to grant a petition to terminate parental rights and, thus, we may affirm the court's decision if we find that it properly concluded that any one of the statutory circumstances existed. See *In re Jermaine S.*, 86 Conn. App. 819, 822 n.3, 863 A.2d 720, cert. denied, 273

of her parental rights was in the best interest of Maci.[3] We disagree with the respondent's claims and, accordingly, affirm the judgment of the court.

The following facts and procedural history are relevant. A neglect petition was filed on April 3, 2019, alleging that Maci had been denied proper care and attention and had been permitted to live under conditions injurious to her well-being. A hearing was held on June 18, 2019, and the court, *Westbrook*, *J.*, adjudicated Maci neglected and ordered six months of protective supervision and specific steps. At a hearing held on November 22, 2019, the court adopted the agreement reached by the parties that Maci's father would have primary physical custody of Maci and decision-making authority with respect to Maci and further ordered that protective supervision be allowed to expire, as scheduled, on December 18, 2019. A second neglect petition was filed on October 23, 2020, alleging that Maci had been denied proper care and attention and that she had been permitted to live under conditions injurious to her well-being. At a hearing on December 8, 2020, the court defaulted the respondent and Maci's father for failure to appear. At a January 5, 2021 hearing, the court adjudicated Maci neglected, and ordered that she be committed to the care and custody of the petitioner, and ordered final specific steps to facilitate reunification. At a January 6, 2022 hearing, the court approved a permanency plan of termination of parental rights and adoption. A petition for the termination of the parental rights of the respondent was filed on January 11, 2022. The respondent was defaulted for failure to appear on February

Conn. 938, 875 A.2d 43 (2005). Because we conclude that the record discloses that there was clear and convincing evidence that the respondent failed to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3) (B), we need not address her remaining claims concerning the statutory grounds for the termination of her parental rights. See id.

[3] Pursuant to Practice Book § 67-13, the attorney for the minor child filed a statement adopting the brief filed by the petitioner.

4, 2022. On December 1, 2022, the court, *Huddleston, J.*, approved a permanency plan of termination of parental rights and adoption.

Maci was born in July, 2018, and has resided with her paternal grandparents and extended family since birth. The respondent initially resided in the home of Maci's paternal grandparents, but left the paternal grandparents' home in August, 2019, after overdosing on heroin. The respondent has not visited with Maci since July or August, 2019.[4] Thereafter, the respondent's whereabouts were unknown for substantial periods of time due to her failure to inform the department of such information. The department made repeated and consistent efforts to locate the respondent, including using LexisNexis searches, obtaining her phone number from text messages, determining when and where her criminal court dates were scheduled, and contacting known family members. At the time of trial, Maci had no recollection of the respondent.

The respondent has a criminal history, including charges for attempt to commit larceny, larceny, failure to appear, breach of the peace, and violation of probation. The court found that "[the respondent] has a severe opioid use disorder including severe cocaine use and severe benzodiazepine use. She reported using heroin in 2021 and experimented with cocaine, MDMA (molly), and prescription drugs. She reported her substance of choice was cocaine and heroin which she would take intravenously. [The respondent] reported using fentanyl along with nonprescribed benzodiazepines and cocaine in 2022 after which she was prescribed methadone. She reports drinking alcohol and

___

[4] The court stated that the respondent has not visited with Maci since July 31, 2019, and, at another point, stated that she has not visited since August 12, 2019, when she left the home of the paternal grandparents. We conclude that whether the respondent last visited on July 31 or August 12, 2019, does not make a material difference in the outcome of this decision.

using marijuana. [The respondent] tested positive for fentanyl eight times in February, 2022, and norfentanyl from February 1, 2022, to March 24, 2022, August 28, 2022, September 1, 2022, October 8, 2022, and seven times from May 3, 2023, to July 14, 2023." (Internal quotation marks omitted.)

The respondent was referred for a clinical assessment for the purpose of determining how best to proceed with reintroducing her to Maci and to help her understand the impact of her absence in Maci's life, but the respondent "has not yet engaged in that therapy" as of the time of trial. The department made several attempts to engage the respondent with the paternal grandmother to facilitate communication regarding reintroducing Maci to the respondent, and the respondent made minimal contact with the paternal grandmother, blamed her for Maci being in her care and engaged in erratic and threatening phone calls with the paternal grandmother over a two year period. The respondent made no effort to be involved in Maci's daily life. On March 13, 2023, the department facilitated a virtual session between the respondent and Maci's paternal grandmother to discuss parenting sessions with Maci, but the respondent initially failed to log on and then experienced technical difficulties during the session, thereby preventing a productive session. At the next session on May 15, 2023, concerns were raised regarding the respondent's having continued blaming the paternal grandmother for being Maci's caregiver. The respondent met with Maci's therapist on April 7, 2023, and struggled with feedback concerning how her abandonment of Maci impacted Maci's emotional well-being and her lack of knowledge of who the respondent is.

The respondent engaged in services at Coventry House and Hallie House for substance abuse treatment. She presented at Coventry House in February, 2022, several months pregnant with another child, engaged in

treatment and tested negative for all substances except methadone, which had been prescribed to her. She returned to Coventry House after the birth of her son and was discharged to Hallie House in September, 2022. At Hallie House, she was given a day pass for December 25, 2022, but she failed to return, failed to respond to telephone calls, and, on December 26, 2022, fabricated a story that her infant son had been hospitalized. She returned to Hallie House on December 28, 2022, and blamed car trouble for her failure to return sooner. At Hallie House, she failed to comply with program rules, failed to participate in case management sessions, failed to comply with her treatment, and was unsuccessfully discharged in January, 2023. The court found that the respondent "continued to regularly test negative for substances at Hallie House where she was tested daily except for the period of time from December 25, 2022, to December 28, 2022, when she failed to return." She then moved her substance abuse treatment to Rushford where she was treated on a monthly basis. She was placed on Suboxone. She missed an appointment scheduled for January 31, 2023, and failed to attend substance abuse treatment sessions from December, 2022, until April, 2023. She reported that she reengaged with Intercommunity, a treatment program for addiction, but Intercommunity did not respond to the department's request for confirmation of compliance or transfer of services. On May 3, 2023, the respondent submitted a toxicology screen that was positive for Suboxone, which she had been prescribed, and fentanyl metabolites. The respondent denied substance use, but she continued to test positive for fentanyl until July 20, 2023. She continues to engage with Intercommunity for substance abuse treatment, is successfully engaged in Suboxone treatment, and continues to submit weekly negative toxicology screens.

The respondent engaged with Proud Program and worked with a recovery coach in a peer support program for parents recuperating from opiate use disorder, and her coach referred her to Narcotics Anonymous, which the respondent attends several times per week. She has been consistent with the program, has been attending fairly regularly with some missed sessions, but the program reported having some difficulty in maintaining contact with the respondent. She tested positive for fentanyl during her work with the program in May and June, 2023.

The respondent began services with a provider called Catherine's Heart Counseling Services in April, 2023, due to her desire to have a better relationship with Maci and to maintain sobriety, but she "failed to successfully engage in those services and was discharged on May 15, 2023." She reengaged with the services in August, 2023, but attended only four sessions, and her case was closed in November, 2023. The court found that the respondent "reported a history of mental health issues and began mental health treatment in 2002. She reported that these issues were in response to her mother's addictions." She began attending weekly individual therapy at Small Victories for mental health treatment on October 4, 2022, and began sessions with a new therapist in April, 2023.

Following a trial, at which the respondent was represented by counsel, the court, *Burgdorff, J.*, found, in the adjudicatory phase, that there was clear and convincing evidence that the department made reasonable efforts to locate and reunify the respondent with Maci, but that the respondent was unable or unwilling to benefit from such services. The court also found by clear and convincing evidence that Maci had been adjudicated neglected and that the respondent had failed to rehabilitate sufficiently under § 17a-112 (j) (3) (B) (ii), that the respondent had abandoned Maci pursuant to § 17a-112

(j) (3) (A), and that there was no ongoing parent-child relationship under § 17a-112 (j) (3) (D). In the dispositional phase of the proceedings, the court made findings by clear and convincing evidence as to each of the criteria set forth in § 17a-112 (k) and determined that terminating the respondent's parental rights was in Maci's best interest. Accordingly, the court rendered judgment terminating the parental rights of the respondent and appointing the petitioner as Maci's statutory parent. This appeal followed. Additional facts will be set forth as necessary.

At the outset, we note that "[a] hearing on a termination of parental rights petition consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the court must determine whether the [petitioner] has proven, by clear and convincing evidence, a proper ground for termination of parental rights. . . . Proceedings to terminate parental rights are governed by § 17a-112. . . . Because a respondent's fundamental right to parent his or her child is at stake, [t]he statutory criteria must be strictly complied with before termination can be accomplished and adoption proceedings begun." (Citation omitted; internal quotation marks omitted.) *In re A. H.*, 226 Conn. App. 1, 15, 317 A.3d 197, cert. denied, 349 Conn. 918, 317 A.3d 784 (2024).

I

The respondent first claims that the court improperly concluded that she was unable or unwilling to benefit from the department's reunification efforts. We disagree.

"Section 17a-112 (j) (1) requires that before terminating parental rights, the court must find by clear and convincing evidence that the department has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this

proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing . . . that such efforts are not appropriate . . . . Thus, the department may meet its burden concerning reunification in one of three ways: (1) by showing that it made such efforts, (2) by showing that the parent was unable or unwilling to benefit from reunification efforts or (3) by a previous judicial determination that such efforts were not appropriate. . . . The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous. . . . [W]e review the trial court's subordinate factual findings for clear error. . . . We review the trial court's ultimate determination . . . [that a parent is unable or unwilling to benefit from reunification services] for evidentiary sufficiency . . . ." (Citations omitted; internal quotation marks omitted.) *In re Corey C.*, 198 Conn. App. 41, 58–59, 232 A.3d 1237, cert. denied, 335 Conn. 930, 236 A.3d 217 (2020).

A

The respondent argues that the court erred in finding that she was unable or unwilling to benefit from reunification efforts because, "[c]ontrary to the trial court's findings, when the [respondent] became aware that the petitioner was reinvolved with her daughter's life again, the [respondent] was engaged in services for herself to be a better parent . . . ." The respondent highlights the progress she made and states that "[p]erhaps no better demonstration of the [respondent's] willingness to engage in reunification services is the [respondent's] own reason for addressing her issues when she stated that she committed herself to going into services on January 26, 2022, so that she could better herself, be a better parent for her children, and wanted to begin on January 26 as a tribute to her mother (whose birthday

was on the 26th), so that she could become a better mother and break the cycle of addiction."

Although the respondent highlights the strides she has made since January 26, 2022, the termination of parental rights petition was filed on January 11, 2022. The court is required in the adjudicatory phase to make its assessment based on events preceding the date on which the termination petition was filed. See *In re Lillyanne D.*, 215 Conn. App. 61, 81–82, 281 A.3d 521, cert. denied, 345 Conn. 913, 283 A.3d 981 (2022); see also Practice Book § 35a-7 (a). The court properly took into account events preceding the January 11, 2022 filing of the termination petition when making its determination regarding the respondent's inability and unwillingness to benefit from reunification efforts. The court found that the respondent was offered case management services by the department, supervised visitation, substance abuse and mental health evaluations through Wheeler Clinic, parenting support through The Village for Families and Children's Therapeutic Family Program, and passes for taxis and public transportation. The court noted that, although the respondent had engaged in some services, she "clearly failed to make sufficient progress in her ability to provide safe and consistent care for Maci. She has also clearly failed to take sufficient advantage of the multiple and well tailored services offered and made available to her by [the department] to improve her circumstances and has demonstrated her unwillingness and/or inability to benefit from reunification services as demonstrated by her inconsistent participation in treatment services. She has clearly not made sufficient progress with regard to her identified treatment needs concerning her substance abuse, mental health and parenting issues." The evidence adduced at trial was sufficient to support the court's finding by clear and convincing evidence that

the respondent was unable or unwilling to benefit from reunification efforts.

B

The respondent also argues that "the court erred in finding that the [respondent] was unable to benefit from services because, even though the [respondent] was not involved toward the end of protective supervision in 2019 and the petitioner did not hear from her until January of 2022, when the [termination of parental rights] default trial was scheduled . . . the petitioner did not make reasonable efforts to locate the [respondent] and engage her in services." (Citation omitted.) The court, in its analysis under § 17a-112 (j) (1), found that the respondent was unable or unwilling to benefit from the department's reunification efforts and, *alternatively*, found that the department made reasonable reunification efforts and used reasonable efforts to locate the respondent. "[T]he [petitioner] must prove [by clear and convincing evidence] *either* that [the department] has made reasonable efforts to reunify or, *alternatively*, that the parent is unwilling or unable to benefit from the reunification efforts. Section 17a-112 (j) clearly provides that the [petitioner] is not required to prove both circumstances. Rather, either showing is sufficient to satisfy this statutory element." (Emphasis in original; internal quotation marks omitted.) *In re Corey C.*, supra, 198 Conn. App. 66. We have concluded in part I A of this opinion that the court properly found that the respondent was unable or unwilling to benefit from reunification services and this finding alone is sufficient to satisfy § 17a-112 (j).[5]

---

[5] We, nonetheless, note that the evidence in the record sufficiently supports the court's findings that the department made reasonable efforts to locate the respondent and that the department made reasonable efforts to reunify the respondent with Maci.

## II

The respondent next claims that the court improperly found that she failed to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3) (B) (ii). We do not agree.

The following legal principles and standard of review are relevant. "Failure of a parent to achieve sufficient personal rehabilitation is one of six statutory grounds on which a court may terminate parental rights pursuant to § 17a-112." (Internal quotation marks omitted.) *In re G. Q.*, 158 Conn. App. 24, 25, 118 A.3d 164, cert. denied, 317 Conn. 918, 118 A.3d 61 (2015). Concerning the failure to achieve personal rehabilitation, § 17a-112 (j) (3) (B) (ii) provides in relevant part for the termination of parental rights when the minor child is adjudicated neglected and the parent of such child "has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." The standard for personal rehabilitation in § 17a-112 (j) (3) (B) is not full rehabilitation. *In re Alejandro L.*, 91 Conn. App. 248, 260, 881 A.2d 450 (2005). At the same time, successful completion of the petitioner's expressly articulated expectations and the court-ordered specific steps is not sufficient to defeat the petitioner's claim that the parent has not achieved sufficient rehabilitation. Id. Rather, even if a parent has made successful strides in her ability to manage her life and may have achieved a level of stability within her limitations, such improvements, although commendable, are not dispositive on the issue of whether, within a reasonable period of time, she could assume a responsible position in the life of her child. Id.

Our standard of review of the court's finding regarding personal rehabilitation pursuant to § 17a-112 (j) (3)

(B) is one of evidentiary sufficiency, that is, whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its conclusion. *In re Fayth C.*, 220 Conn. App. 315, 320, 297 A.3d 601, cert. denied, 347 Conn. 907, 298 A.3d 275 (2023). In applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court. Id.

In its memorandum of decision, the court found that the respondent "minimally complied with her specific steps as ordered by the court on January 4, 2021. Despite numerous attempts by [the department] to assist and engage [the respondent], she failed to adequately engage in, participate or benefit from substance abuse and mental health treatment programs in order to sufficiently address her substance use and mental health issues. She failed to keep [the department] apprised of her whereabouts on a regular basis and failed to maintain adequate housing and a legal income. [The respondent], to her credit, did engage in some of her treatment services but failed to consistently and successfully do so. It is abundantly clear that she has not sufficiently benefitted from those services as she continues to struggle with her sobriety issues. Most concerning to the court is her failure to visit with Maci since 2019 although repeatedly encouraged by [the department] to do so. [The respondent] has clearly failed to demonstrate the desire and ability to adequately and safely parent Maci." The court found by clear and convincing evidence that the respondent had not achieved sufficient personal rehabilitation to the extent that she could assume a responsible position in Maci's life within a reasonable period of time given Maci's age and need for permanency.

There is ample evidence in the record to support the court's finding that the respondent failed to achieve a sufficient degree of personal rehabilitation.[6] The respondent has not visited Maci since 2019, after an incident wherein she overdosed on heroin at the home of Maci's paternal grandparents, and, thereafter, her whereabouts were unknown to the department, despite efforts to locate her, until she resurfaced sometime in January, 2022. Thereafter, the respondent engaged in services at Coventry House and was discharged to Hallie House but failed to comply with her treatment at Hallie House and was unsuccessfully discharged in January, 2023. She continued to test positive for fentanyl numerous times in 2022 and 2023. Although she attended Narcotics Anonymous several times per week as of the time of trial, she tested positive during her work in that program in May and June, 2023. She began services at Catherine's Heart Counseling Services due to her desire to have a better relationship with Maci and successfully maintain sobriety but failed to engage in services and was discharged in May, 2023. Although the respondent made some strides, the court noted that she "has clearly not sufficiently benefitted from her services, and any limited progress she has made is much too little and much too late for Maci, especially in light of her failure to visit with Maci since 2019." In addition, in assessing rehabilitation, the critical issue is not whether the parent has improved her ability to manage her own life but, rather, whether she has gained the ability to care for the particular needs of her child. *In*

---

[6] Although a trial court generally is limited to considering evidence of events preceding the filing of the petition in the adjudicatory phase of a termination proceeding; see Practice Book § 35a-7 (a); a trial court retains discretion to consider events and behavior that occurred after the filing of the termination petition to determine if the respondent had failed to achieve sufficient personal rehabilitation to allow her to assume a responsible position in her child's life within a reasonable time. *In re Yolanda V.*, 195 Conn. App. 334, 346–47, 224 A.3d 182 (2020). In the present case, the court exercised that discretion.

*re Eric M.*, 217 Conn. App. 809, 829, 290 A.3d 411, cert. denied, 346 Conn. 921, 291 A.3d 1040 (2023). The court determined that the respondent continues to struggle with sobriety and that, "[m]ost concerning," was the respondent's failure to visit Maci since 2019 despite repeated encouragement from the department to do so. For the foregoing reasons, the court's finding by clear and convincing evidence that the respondent failed to demonstrate the desire and ability to adequately and safely parent Maci and failed to achieve sufficient personal rehabilitation within the meaning of § 17a-112 (j) (3) (B) is sufficiently supported by the record.

## III

The respondent last claims that the court improperly determined that the termination of her parental rights was in the best interest of Maci. We disagree.

We first set forth the relevant principles and the standard of review. "[A]n appellate tribunal will not disturb a trial court's finding that termination of parental rights is in a child's best interest unless that finding is clearly erroneous. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling. . . . In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of the child. . . . In the dispositional phase . . . the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in . . . § 17a-112 [(k)]. . . . The seven factors serve simply as guidelines for the court and are not statutory

prerequisites that need to be proven before termination can be ordered. . . .

"In addition to considering the seven factors listed in § 17a-112 (k), [t]he best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [her] environment. . . . Furthermore, in the dispositional stage, it is appropriate to consider the importance of permanency in [a child's life]." (Citation omitted; footnotes omitted; internal quotation marks omitted.) *In re Autumn O.*, 218 Conn. App. 424, 442–44, 292 A.3d 66, cert. denied, 346 Conn. 1025, 294 A.3d 1026 (2023).

"[T]he balancing of interests in a case involving termination of parental rights is a delicate task and, when supporting evidence is not lacking, the trial court's ultimate determination as to a child's best interest is entitled to the utmost deference. . . . Although a judge [charged with determining whether termination of parental rights is in a child's best interest] is guided by legal principles, the ultimate decision [whether termination is justified] is intensely human. It is the judge in the courtroom who looks the witnesses in the eye, interprets their body language, listens to the inflections in their voices and otherwise assesses the subtleties that are not conveyed in the cold transcript." (Internal quotation marks omitted.) *In re Malachi E.*, 188 Conn. App. 426, 444–45, 204 A.3d 810 (2019).

The court made findings under each of the seven statutory factors of § 17a-112 (k) before determining by clear and convincing evidence that, under the totality of the circumstances, termination of the respondent's parental rights was in the best interest of Maci. In so finding, the court stated that it was "clear" that Maci could not be returned to the respondent in the foreseeable future, the respondent has not made sufficient progress in addressing her long outstanding issues, she

has not sufficiently availed herself of the services offered by the department in order to improve her circumstances to the extent that she can play a responsible role in Maci's life, she has not been able to put Maci's interests ahead of her own, she is not able to provide a safe, competent, and nurturing environment for Maci, she is not able to provide Maci with the necessary structure for her basic needs, she has not exhibited the ability to address appropriately or understand Maci's needs, Maci has been committed to the petitioner's care since January 4, 2021, and has resided with her preadoptive foster parents for her entire life, and, most significantly, the respondent has not visited with Maci since 2019 and is a "virtual stranger" to her. The court determined that, in light of the respondent's "significant ongoing issues, it is clearly not in Maci's best interests to wait additional time for [the respondent] to rehabilitate. [The respondent has] had significant time and opportunity to address [her] issues and comply with the services required of [her] and [has] failed to do so.

"The court has balanced the child's intrinsic need for stability, sustained growth, development, well-being, and permanency against the potential benefits of maintaining a connection with [the respondent]. . . . In consideration of all these factors and after weighing all of the evidence, the court finds that the clear and convincing evidence has established that it is in the best interests of Maci to terminate the parental rights of [the respondent] to ensure that she has a secure and safe placement so she can grow and mature to become a productive child and adult in a healthy manner. She has a strong bond with her foster mother and foster family who are meeting all of her needs and with whom she shares a mutual love and affection. Her foster parents plan to adopt her if she becomes legally free for her to do so. Maci needs the permanency and stability her foster parents continue to provide for her which

cannot be provided by [the respondent] within the fore-seeable future. While [the respondent] appear[s] to love [Maci], [the respondent's] bond with her is minimal at best." (Citation omitted.)

The respondent argues that the court erred in determining that it was in Maci's best interest to terminate her parental rights in light of her consistent engagement with services, the progress she has made, and her having cared for her newborn infant son.[7] She further contends that, "[e]ven though [she] will have to work at reestablishing her relationship with her daughter, it is in Maci's best interest to allow [her] to do so because Maci deserves the right to have a relationship with her mother."

Although the respondent highlights the strides she has made, whatever progress she arguably has made toward rehabilitation is insufficient to reverse the court's factually supported best interest finding. See *In re Aubrey K.*, 216 Conn. App. 632, 663, 285 A.3d 1153 (2022), cert. denied, 345 Conn. 972, 286 A.3d 907 (2023). "As we have stated previously, the court's inquiry in the dispositional phase of the proceeding was properly focused on whether termination of the respondent's parental rights was in the [child's] best interest." (Internal quotation marks omitted.) Id. The respondent's

_____

[7] The relevant inquiry under § 17a-112 (j) requires the court to analyze the parent's rehabilitative status as it relates to the needs of the *particular child*, and, although a court may consider a respondent parent's history with her other children to gain perspective on the respondent's child caring and parenting abilities to determine if she had achieved rehabilitation, such a consideration is not dispositive of the court's analysis. *In re Serenity W.*, 220 Conn. App. 380, 398, 298 A.3d 276, cert. denied, 348 Conn. 902, 300 A.3d 1166 (2023). A court reasonably may conclude that a respondent parent is unable to assume a responsible position in the life of one child, even though another child remains in that parent's care. Id. Moreover, the court found that the petitioner filed a neglect petition as to the respondent's son on October 3, 2023, due to the respondent's relapse and lack of progress with her treatment services.

efforts to rehabilitate, although commendable, speak to her own conduct, not the best interest of Maci. See id.

There is ample evidence in the record to support the court's determination that it was in the best interest of Maci to terminate the respondent's parental rights. After the respondent overdosed on heroin in the home of Maci's paternal grandparents in August, 2019, she left that home. She has not visited with Maci since July or August, 2019, despite the fact that the department encouraged her to engage in regular visitation with Maci. The court found that Maci has a strong and positive emotional bond with her paternal grandparents with whom she has resided since birth. The respondent continued to test positive for fentanyl in 2022 and 2023. The court found that the respondent has not maintained sufficient income, housing, or insight to the extent that she can demonstrate that she can provide Maci with the care necessary to ensure that her needs are met. This evidence supports the court's finding that the respondent has not made sufficient progress to be able to safely parent Maci and that she has failed to improve her ongoing issues to the extent that she could assume a responsible role in Maci's life in the foreseeable future. On the record before us, we conclude that the court's finding as to Maci's best interest is factually supported and legally sound and we will not substitute our judgment for that of the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.